USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-1956 BATH IRON WORKS CORP., and LIBERTY MUTUAL INSURANCE CO., Petitioners, v. DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent. ____________________ PETITION FOR REVIEW OF A DECISION OF THE BENEFITS REVIEW BOARD ____________________ Before Boudin, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Kevin M. Gillis, with whom Troubh, Heisler & Piampiano was on ________________ ____________________________ brief for petitioners. G. William Higbee, with whom McTeague, Higbee, MacAdam, Case, __________________ __________________________________ Watson & Cohen was on brief, for claimant, Lawrence J. Shorette. ______________ ____________________ March 21, 1997 ____________________ LYNCH, Circuit Judge. Bath Iron Works Corporation LYNCH, Circuit Judge. _____________ ("BIW") and its insurer, Liberty Mutual Insurance Company complain of a decision of the Benefits Review Board affirming the award of medical benefits to Lawrence J. Shorette, a BIW employee. The award was pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. 901 et seq., _______ which creates a presumption that a claimant's medical condition is causally related to his employment. See 33 ___ U.S.C. 920(a). The Board agreed with the administrative law judge that BIW had failed to rebut this presumption. BIW disagrees, arguing that it adduced substantial evidence tending to show that Shorette's lung disease was not caused by his employment at the Bath shipyard. Shorette1 counters that BIW presented no evidence casting doubt on the possibility that his work at BIW had, at a minimum, aggravated his health problems. I. Shorette began working as a cleaner at the BIW shipyard in Bath, Maine, in 1981. His responsibilities included collecting and bagging waste asbestos during "asbestos ripouts," and he was exposed to asbestos dust on a  ____________________ 1. The named respondent is the Director of the Office of Workers' Compensation Programs of the United States Department of Labor, see Ingalls Shipbuilding, Inc. v. ___ ____________________________ Director, Office of Workers' Compensation Programs, 117 S. ____________________________________________________ Ct. 796, 807 (1997), but Shorette is the real party in interest and is represented by counsel. -2- 2 daily basis. Despite measures such as protective equipment and decontamination procedures, on several occasions in 1981 Shorette may have inadvertently inhaled asbestos dust. Although cleaners were required to undergo a decontamination process after every asbestos ripout, the decontamination process itself caused unprotected asbestos exposure when fellow workers, covered with asbestos, entered the area. There were times while Shorette was working at the shipyard when he had come into contact with fine airborne dust of unknown origin that might have been asbestos. There were other incidents as well. On one occasion, Shorette's respirator hose was disconnected for about ten minutes and his mask filled with asbestos dust. On another occasion, Shorette was working without protective equipment in an area that supposedly contained no asbestos. It later turned out that there had been asbestos in the area. In late 1981, Shorette began periodic medical monitoring through BIW's asbestos surveillance program. Shorette's initial x-rays from late 1981 and early 1982 revealed lung problems -- interstitial fibrotic changes which could have been caused by asbestos exposure. The program doctors recommended that Shorette no longer perform asbestos clean-ups, and from that time on his work has been limited to general cleaning. In 1989, x-rays showed further deterioration of Shorette's lung condition. BIW Industrial -3- 3 Health Department records noted "interstitial fibrosis suggestive of asbestosis" in 1987, "probable asbestosis" in 1989 and "probable asbestosis with an ILO rating of 3/3"2 in 1991. In March 1990, Shorette asserted a LHWCA claim against BIW for medical benefits for asbestosis. A hearing was held before an ALJ in October 1992. To rebut the statutory presumption in favor of the employee, 33 U.S.C.  920(a), BIW submitted evidence suggesting that Shorette might have been exposed to asbestos well before he began working at the Bath shipyard. Shorette had been in the Navy from 1955 to 1959 and he agreed it was possible that he had been exposed to asbestos during that period. However, BIW was unable, upon questioning Shorette, to identify any specific instances of exposure. Shorette also might have been exposed to asbestos while working at Times Fibre Communications between 1966 and 1978, but again BIW's questioning could not identify any specific incidents. BIW also produced medical testimony from two experts indicating that it was unlikely that Shorette's exposure to asbestos in 1981 at BIW had caused the lung damage that was evident in x-rays from 1981 and 1982 because,  ____________________ 2. This unfavorable rating is based on a well-accepted classification scheme for occupational lung disease, and reflects the size and extensiveness of the obstructions on the lung. -4- 4 among other reasons, not enough time had passed. In May 1982, Shorette had visited Dr. John Kanwit, a family practitioner, who diagnosed him as having an acute lung infection (probably bronchitis) and chronic asbestosis. Dr. Kanwit testified that, due to the long latency period between exposure and the development of interstitial lung changes, "it would be less than likely that asbestos exposure a year or less before the patient presented with his symptoms would have been the cause of his problem." He further stated, "I'm sure [the exposure] didn't help the situation, but I would be very surprised if he could develop asbestosis quite that quickly." There was also evidence from Dr. Harder, a pulmonary disease specialist, who saw Shorette on two different occasions during the summer of 1991. Dr. Harder took a medical history of the 1981 exposures and of the abnormal x-ray findings from 1981 and 1982. Dr. Harder diagnosed Shorette with obstructive lung disease caused by cigarette smoking and interstitial lung disease of unknown cause. He testified that interstitial changes have an eight to twenty year latency period, and so he did not think the changes shown on the 1981 and 1982 x-rays could have been caused by exposure in 1981. He also noted that the absence of pleural plaques on the x-rays was counterindicative of asbestosis, because with asbestos related lung disease, -5- 5 pleural plaques tend to (but do not always) develop before the interstitial lung changes become apparent. Dr. Harder indicated that exposure to asbestos was one possible cause of Shorette'slungdisease butthathe couldnotrule outother causes. The ALJ found that BIW had not rebutted the statutory presumption of a causal relationship between a claimant's employment and his medical condition. He reasoned that "no basis has been presented for concluding that the progression of the disease noted on the 1989 x-ray film . . . was not related to the 1981 or 1982 exposures." Relying on Brown v. Jacksonville Shipyards, Inc., 893 F.2d 294, 297 _____ ______________________________ (11th Cir. 1990), the ALJ found that the medical evidence offered by the employer did not completely rule out the possibility that the claimant's condition was causally related to the employment. The ALJ therefore ordered that the employer and the insurance carrier that bore the risk at the time of the asbestos exposure in 1981 pay for Shorette's related medical expenses. The Benefits Review Board affirmed, stating that BIW had not submitted evidence "sufficient to rebut the presumed causal link between the progression of the claimant's lung disease as noted on his 1989 x-ray and his exposures to asbestos while working for employer in 1981 and 1982." This appeal ensued. II. -6- 6 Our review of legal conclusions by the Board is plenary; our review of its factual findings is deferential. "In reviewing for substantial evidence it is immaterial that the facts permit diverse inferences as long as those drawn by the ALJ are supported by evidence." Sprague v. Director, _______ _________ Office of Workers' Compensation Programs, 688 F.2d 862, 866 _________________________________________ (1st Cir. 1982). There is no question that Shorette established a prima facie case and thus is entitled to the statutory presumption that his injury or harm arose out of and in the course of his employment. See 33 U.S.C. 920(a). The ___ burden was thus on the employer to rebut the presumption with substantial evidence that the condition was not caused or aggravated by his employment. BIW argues that it submitted substantial evidence showing to a reasonable medical probability that Shorette's condition was not related to his employment, and therefore that it rebutted the statutory presumption. It argues that the ALJ and Board imposed too high a burden on the employer to rebut the statutory presumption. BIW argues that the Board erroneously applied our decision in Sprague. It contends that it did present _______ evidence sufficient to rebut the presumption that the condition shown in the 1981 and 1982 x-rays was caused by 1981 exposures. If that were what the Board had decided in -7- 7 this case, we would agree with the insurer. The employer need not rule out any possible causal relationship between the claimant's employment and his condition. This would go far beyond the substantial evidence standard set forth in the statute. But both the Board and the ALJ based their decisions at least in part on the ground that the 1989 x-rays showed an aggravation of the earlier condition, which aggravation was presumptively caused by Shorette's employment at BIW. The expert opinions proffered by the employer did not address and did not present substantial evidence that the condition shown in the 1989 x-rays was not related to Shorette's 1981 exposures. BIW did not present substantial evidence -- indeed it did not present any evidence -- that the 1989 condition was not at least aggravated by the 1981 exposure at BIW. The employer is liable if the exposure either caused the disease or caused an aggravation of the disease. The employer having failed to meet its evidentiary burden, the decision of the Board is affirmed. ________ -8- 8