# United States Court of Appeals

## For the First Circuit

No. 03-2530

BATH IRON WORKS CORPORATION,

Petitioner,

v.

MICHAEL PRESTON and
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,

Respondents.

APPEAL FROM THE BENEFITS REVIEW BOARD

Before

Boudin, <u>Chief Judge</u>,
Lipez and Howard, <u>Circuit Judges</u>.

<u>Stephen Hessert</u>, with whom <u>Doris V. R. Champagne</u> and <u>Norman,
Hanson & Detroy, LLC</u> were on brief, for petitioner.
<u>Marcia J. Cleveland</u> for respondents.

August 30, 2004

**LIPEZ, <u>Circuit Judge</u>.** Michael Preston filed a worker's compensation claim against his employer, Bath Iron Works (BIW), alleging that harassment in the workplace aggravated the symptoms of his previously existing neurological condition. After the Administrative Law Judge (ALJ) denied benefits, Preston appealed to the Benefits Review Board (the Board). In vacating the ALJ's decision, the Board ruled that the ALJ had not determined whether the stress and harassment claimed by Preston had occurred, and it remanded for further consideration. On remand, the ALJ made the requisite findings on stress and harassment and reversed his earlier disposition by granting benefits to Preston. BIW appealed the ALJ's second decision, and the Board affirmed. BIW now appeals to this court, arguing primarily that the Board erred in overturning the ALJ's first decision denying benefits. It also challenges rulings in the Board's second decision. After careful review, we affirm.

I.

We derive the following facts from the record before the ALJ. We relate only those facts necessary to dispose of the issues on appeal.

Michael Preston suffers from a hereditary neurological disorder called paramyoclonus multiplex, which causes involuntary shaking of his head and arms. Preston has suffered symptoms of the disease from approximately age ten until the present. The

involuntary shaking tends to become worse when he is under stress. When the stress subsides, however, his symptoms usually subside.

From 1978 until 1998, Preston worked at the BIW shipyard in Bath, Maine. He began work as a "rigger," which required him to attach shackles to ship components--which often weighed between 100 and 150 tons--so that they could be picked up by a crane. Typically, he worked as part of a six to eight person crew, and most of his work was done on the ground or in a hydraulic lift called a "cherry picker." In the last six to eight years of his career, Preston spent about half of his time at work as a crane operator, maneuvering cranes that sat on tracks approximately forty feet above the floor of the assembly area.

Preston alleges that, during his twenty years at BIW, he was ridiculed, called derogatory names, and subjected to practical jokes because of the symptoms of his disease. Members of his crew referred to him as "Shake and Bake" and would sometimes try to startle him so that his shaking would become more pronounced. This harassment caused stress, which in turn exacerbated Preston's symptoms. As his shaking worsened, he began to worry that he could not safely perform his job. In a harmful cycle, this concern caused even greater stress which further aggravated his symptoms. As his symptoms grew worse, he claims that his coworkers began to question whether he was a danger to his crew.

-3-

In light of these difficulties at work, Preston began to take time off to get his symptoms under control. On the advice of his treating physician, Dr. Stephanie Carcini, he stopped working altogether on August 28, 1998. He reports that his symptoms have improved since he stopped working.

## II.

On October 22, 1998, Preston filed a claim for benefits under the Longshore and Harbor Workers' Compensation Act (the Act), 33 U.S.C. §§ 901-950. On November 4, 1998, BIW controverted Preston's claim. An ALJ held hearings on April 17 and April 19, 2000, during which both parties presented evidence, including the expert testimony of several physicians. Preston argued that the working conditions at BIW so aggravated the symptoms of his disorder that he could not continue working. BIW contended that any teasing or ridicule at the shipyard was minor and that any deterioration in Preston's condition was due to other stressful events in his life, such as struggles with his family life and his recurring problems with alcohol abuse.

The evidence offered by BIW included the testimony of a neurologist, Dr. Seth Kolkin, and an evaluation conducted by a psychiatrist, Dr. David J. Bourne. In his written decision, the ALJ described Dr. Kolkin's testimony about whether stress could aggravate Preston's conditions:

> Dr. Kolkin . . . testified that stress can
> worsen the involuntary movements associated

-4-

with myoclonus but only as a temporary aggravation, that any improvement of that temporary condition "depends on the exact situation and his levels of concentration, medications, fatigue, motivation" and that [Preston] advised the doctor that he found his work to be stressful "because of depression and difficulties at work."

. . . [T]he doctor agree[d] [that] "[s]tress, depression[,] any volition, motivation, any degree of psychological state" would affect [Preston's] movements. . . .

According to the doctor, stress and fatigue will "transiently" exacerbate [Preston's] symptoms, that the exacerbation would last for the "duration of the fatigue or stress" and "once that stress is resolved (the person) would be back at (his) baseline," the doctor remarking that it would take "moments" to return to baseline after the stress is removed and that [Preston] "could work if he had a calm, supportive environment," and "that if he were motivated and given some latitude and encouragement and support, there is no reason why he couldn't be doing what he was doing before if he wanted to be." According to the doctor, if [Preston] were to be called derogatory names because of his myoclonus, he should report those instances to his supervisors and if action were not taken to stop that harassment, then such would not constitute a calm and supporting work environment.

Dr. Bourne's evaluation, dated June 22, 2000, assessed only Preston's complaints of psychological problems, including anxiety and depression. The ALJ quoted Dr. Bourne's evaluation at length in his opinion, including the following passage:

It is my [Dr. Bourne's] belief that Mr. Preston's psychological condition has been caused by his physical illness and by the deterioration of his health which he perceives. His movement disorder has caused a psychological struggle, which has left him

-5-

feeling isolated, sensitive and hurt. I do not have the expertise to determine whether any eventual aggravation of the movement disorder is or was due to work conditions, and will defer to the expertise of neurologists concerning that issue.

Thus, Dr. Kolkin stated that stressful working conditions could aggravate Preston's physical symptoms, even if the aggravation lasted only as long as the stress remained. Dr. Bourne explicitly limited his analysis to Preston's psychological, rather than his physical, problems, and avoided any opinion on whether work conditions aggravated Preston's movement disorder.

On January 2, 2001, the ALJ denied benefits to Preston. In his written order he explained that, to be eligible for benefits, a claimant must first establish a prima facie case, which gives rise to a presumption that his injury was caused by his employment and thus is covered by the Act.

> To establish a prima facie claim for compensation, a claimant need not affirmatively establish a connection between work and harm. Rather, a claimant has the burden of establishing only that (1) the claimant sustained physical harm or pain and (2) an accident occurred in the course of employment, or conditions existed at work, which could have caused the harm or pain.

(citations omitted). The ALJ noted that "[i]f claimant's employment aggravates a non-work-related, underlying disease so as to produce incapacitating symptoms, the resulting disability is compensable." He also described the effect of establishing a prima facie case:

Once this _prima facie_ case is established, a presumption is created under Section 20(a) [33 U.S.C. § 920(a)][1] that the employee's injury or death arose out of employment. To rebut that presumption, the party opposing entitlement must present substantial evidence proving the absence of or severing the connection between such harm and employment or working conditions. . . . If the presumption is rebutted, it no longer controls and the record as a whole must be evaluated to determine the issue of causation.

Despite laying out this analytical framework accurately, the ALJ did not make specific findings as to whether Preston had suffered the ridicule and verbal abuse at work that he had described, or whether the alleged abuse had aggravated the symptoms of his disease. Instead, the ALJ ruled that BIW had adequately rebutted any Section 20(a) presumption of causation through Dr. Kolkin's testimony and Dr. Bourne's evaluation. He analyzed the rebuttal of the Section 20(a) presumption in two passages. In the first, he acknowledged the nature of Preston's claim and then dispatched it summarily:

In the case sub judice, Claimant alleges that the harm to his bodily frame . . . resulted from working conditions at the Employer's shipyard. The Employer has introduced substantial evidence severing the connection

_____

[1]33 U.S.C. § 920 provides in relevant part:

In any proceeding for the enforcement of a claim for compensation under this Act it shall be presumed, in the absence of substantial evidence to the contrary--

(a) that the claim comes within the provisions of this chapter.

between such harm and Claimant's maritime employment. Thus, the presumption falls out of the case, does not control the result and I shall now weigh and evaluate all of the record evidence.

Later in the opinion, he revisited BIW's attempt to rebut the Section 20(a) presumption:

> [T]he Employer, in this case, has clearly introduced substantial evidence to rebut the presumption with the testimony of Dr. Kolkin, both in his report and in his deposition, and with the testimony of Dr. Bourne. Dr. Kolkin testified that Claimant's condition is the same now as it was six or ten years ago and has not been aggravated or accelerated by his work as a rigger, or by any of the alleged stress in any way in the work environment. Dr. Bourne has testified that Claimant's psychological condition is a chronic adjustment disorder which is caused by his underlying pre-existing disease and which was not caused, accelerated, aggravated or exacerbated by the alleged stress at work.

The ALJ cited only Dr. Kolkin's testimony and Dr. Bourne's evaluation in determining that BIW had rebutted the Section 20(a) presumption of causation with substantial evidence.

Preston appealed the ALJ's decision to the Board. In its written opinion of January 22, 2002, the Board noted that the ALJ had not made specific findings on whether Preston had actually suffered increased harassment and stress while working at BIW:

> While the administrative law judge identified claimant's allegations as to "harm" and "working conditions," he did not determine whether the alleged stress and harassment at claimant's workplace occurred. Without findings evaluating the conflicting evidence on this issue the Board lacks the proper

-8-

> context for considering whether employer presented substantial evidence in rebuttal.

The Board reasoned that it should remand the case to the ALJ with instructions to determine "whether [Preston's] condition or its symptoms were aggravated by conditions or an accident at work. Answering this question requires findings identifying the accident or working conditions in existence which could have aggravated [Preston's] condition."

Additionally, the Board instructed the ALJ that Dr. Kolkin's testimony and Dr. Bourne's evaluation were, as a matter of law, inadequate to rebut the Section 20(a) presumption of causation if the ALJ found on remand that Preston had established a prima facie case. The Board explained:

> [T]he opinion of Dr. Kolkin actually supports a causal connection rather than rebutting it as the administrative law judge found. . . . Dr. Kolkin testified that stress could temporarily worsen the symptoms of claimant's myoclonus disease. He also stated that the increase of the involuntary movements would not be permanent but, rather, would dissipate when the stressor was removed. . . . This medical evidence supports the conclusion that stressful working conditions could have aggravated claimant's condition.

In a footnote, the Board explained that Dr. Bourne's evaluation was also insufficient to rebut the Section 20(a) presumption: "Dr. Bourne's report addressed only the alleged psychiatric injury and not the physical injury. In fact, Dr. Bourne specifically admitted

-9-

he has no expertise to determine whether claimant's physical disorder had been aggravated by his employment."

On remand, the ALJ stated that, "having been directed by the Board to reconsider the totality of this closed record on the nature and extent of the Section 20(a) presumption, [I am] now constrained to find and conclude that [Preston] has established a prima facie claim." His opinion contained a detailed analysis of the evidence supporting the conclusion that the work environment at BIW had caused stress that aggravated Preston's involuntary shaking. Specifically, the ALJ relied on Preston's testimony, and the testimony of Preston's supervisor, in finding that Preston had been ridiculed at work, that this ridicule caused stress, and that his symptoms had at least worsened temporarily during stressful periods during his twenty years at BIW. Additionally, the ALJ relied on testimony by BIW's own expert medical witnesses in finding that workplace stress could exacerbate Preston's symptoms, if only temporarily, and thus that Preston had established that workplace conditions could have aggravated the symptoms of his underlying condition. The ALJ then found that BIW had not rebutted the Section 20(a) presumption, noting correctly that the Board had ruled as a matter of law that Dr. Kolkin's testimony and Dr. Bourne's evaluation were not sufficient for rebuttal. Finally, the ALJ ruled that Preston's claim was not time barred and that Preston

was entitled to benefits based on his weekly wages and medical expenses.

In making these findings and rulings, the ALJ groused that he had been "prompted by the Board." Specifically, he stated that "after being prompted by the Board, I now find and conclude that Mr. Preston has introduced ample evidence of harm to invoke the [Section 20(a)] presumption." He then added this complaint:

> This matter is another example of cases involving my decisions wherein the Board has clearly usurped the functions of this Administrative Law Judge, has clearly substituted its opinions for this trier-of-fact who presided over two days of formal hearings and who alone had the opportunity to hear the testimony and judge the credibility of witnesses testifying under oath before me. In certain cases, the Board has treated the Section 20(a) presumption as virtually an irrebuttable presumption. This matter, in my judgment, is another of those cases.

BIW appealed this second decision to the Board. Taking some cues from the complaints of the ALJ, it argued that the Board's first decision "exceeded the scope of its review and usurped the administrative law judge's function as a fact-finder" because it "reweighed the evidence and made inappropriate factual determinations in concluding that employer did not establish rebuttal of the Section 20(a) presumption as a matter of law." It further argued that the Board had improperly "required employer to 'rule out' any possible causal connection between claimant's employment and his condition in order to establish rebuttal,"

-11-

instead of allowing BIW to rebut a Section 20(a) presumption with only "substantial evidence."

The Board rejected these arguments.  It ruled that its first decision had only required the ALJ to undertake the Section 20(a) analysis mandated by law, which required the ALJ to make specific findings about stress and harassment in Preston's workplace.  With respect to its ruling that BIW had not introduced evidence sufficient to rebut a Section 20(a) presumption, the Board wrote that it had merely "applied the well-established aggravation rule, which provides that where a claimant's employment aggravates, accelerates or combines with a pre-existing condition, the entire resulting disability is compensable."  Under that rule, BIW could only rebut a Section 20(a) presumption of causation with "substantial evidence that claimant's condition was not aggravated by his working conditions."  The Board concluded that "[a]s none of the physicians opined to 'a reasonable degree of medical certainty' that claimant's working conditions did not aggravate his underlying physical condition, employer did not meet its burden of production" to rebut the Section 20(a) presumption.  The Board affirmed the ALJ's second decision because BIW had "not challenge[d] the administrative law judge's findings invoking Section 20(a)" and had "not point[ed] to any evidence sufficient to rebut Section 20(a)." Finally, the Board affirmed the ALJ's rulings on the timeliness of Preston's filing and the award of benefits.

On appeal to this court, BIW argues primarily that the Board erred in overturning the ALJ's first decision. It further argues that both the Board and the ALJ, in the second round of decisions, erred in (1) finding that Preston filed his claim in a timely fashion, (2) finding that Preston was "disabled" within the meaning of the Act and was therefore entitled to benefits, (3) determining Preston's average weekly wage for the purpose of calculating the award of benefits, and (4) considering the question of medical benefits even though the parties had agreed to litigate that issue at a later date. We take each of these arguments in turn. "This court reviews the [Board's] decision on legal issues de novo and determines whether the Board adhered to the 'substantial evidence' standard when it reviewed the [ALJ's] factual findings." Bath Iron Works v. Brown, 194 F.3d 1, 3 (1st Cir. 1999).

## III.

### A. The Board's First Decision

"In order for an injury to be covered by the Act, the claimant must initially make out a prima facie case. That is, a claimant 'must at least allege an injury that arose in the course of employment as well as out of employment.'" Brown, 194 F.3d at 4 (quoting U.S. Indus./Fed. Sheet Metal, Inc. v. Director, OWCP, 455 U.S. 608, 615 (1982)). To establish a prima facie case, a claimant must make two showings: (1) that he "sustained physical

harm" and (2) "that conditions existed at work which could have caused the harm." Susoeff v. San Francisco Stevedoring Co., 19 Ben. Rev. Bd. Serv. 149, 151 (1986). Thus, to make his prima facie case, the claimant is not required to show a causal connection between the harm and his working conditions, but rather must show only that the harm could have been caused by his working conditions. For the purposes of making a claim under the Act, the physical harm alleged can be the aggravation of a previously existing condition. See Gardner v. Director, OWCP, 640 F.2d 1385, 1389 (1st Cir. 1981) (holding that aggravation of claimant's symptoms from a previously existing venous condition was compensable under the Act); Strachan Shipping Co. v. Nash, 782 F.2d 513, 517 (5th Cir. 1986) ("[W]here an employment injury worsens or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone, the entire resulting disability is compensable.").

Once a claimant makes a prima facie case, he is entitled to a presumption that the injury was caused by his working conditions and is therefore compensable under the Act. 33 U.S.C. § 920(a); see also Brown, 194 F.3d at 5 ("Once [claimant] made out his prima facie case, there was a presumption of liability."). An employer can rebut this so-called "Section 20(a)" presumption by

-14-

demonstrating, through substantial evidence,[2] that the injury was not caused by the claimant's working conditions. See Brown, 194 F.3d at 5; Sprague v. Director, OWCP, 688 F.2d 862, 865 (1st Cir. 1982). If an employer introduces substantial evidence severing the causal connection between the injury and claimant's working conditions, "the presumption 'falls' out of the case." Sprague, 688 F.2d at 866 n.7. In that instance, the claimant bears the burden of showing, "based on the record as a whole," that his injury was caused by his working conditions. Brown, 194 F.3d at 5.

BIW contends that the Board erred in its first decision by ruling that the ALJ had not made sufficient "findings identifying the accident or working conditions in existence which could have aggravated [Preston's] condition." Rather, BIW argues that the ALJ found in his first decision that Preston had suffered stress on the job that could have aggravated his condition, determined that Preston had established a prima facie case entitling him to the Section 20(a) presumption of causation, but then ruled that BIW had rebutted that presumption with substantial evidence that personal factors unrelated to work caused claimant's stress and worsened his condition.

---

[2]"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sprague v. Director, OWCP, 688 F.2d 862, 865 (1st Cir. 1982) (citation and quotation marks omitted).

BIW points to a single statement from the ALJ's first decision to support its argument that he made the necessary findings on stress and harassment: "I may properly rely on Claimant's credible testimony to establish that he experienced a work-related harm, if the record reflects the presence of working conditions that could have caused the harm, thereby invoking the Section 20(a) presumption."  This is a contingent finding -- "if the record reflects . . . ."  The ALJ never stated whether "the record reflects the presence of working conditions that could have caused the harm."

In contrast, the ALJ made explicit findings about Preston's work environment in his second decision.  Specifically, he found that Preston was "routinely called 'Shake and Bake'" and that "[t]his nickname was so pervasive that at least some employees did not know [Preston] by his real name."  He further found that Preston "was subjected to ad hominum [sic] and dehumanizing remarks about a genetic condition he could not do anything to change," that "even though his job performance was good, he was subjected to constant name calling and pranks," and that "[s]urely, ridicule for an inherited condition would make the usual stress of a job worse for anyone."  He concluded that Preston's "stressful working conditions aggravated, accelerated and exacerbated his pre-existing and chronic neurological disorder."  In the absence of such

-16-

findings in the ALJ's first decision, the Board was entitled to remand the case to the ALJ.

BIW next argues that the Board's first decision ignored the ALJ's findings that the evidence "as a whole" did not support a causal connection between the aggravation of Preston's symptoms and his workplace conditions. This argument, however, skips several steps in the proper analysis. The ALJ could only consider "the record as a whole" after finding that (1) Preston had established a prima facie case and was therefore entitled to the Section 20(a) presumption, and (2) BIW had rebutted the Section 20(a) presumption. In reviewing the ALJ's first decision, the Board never reached the ALJ's analysis of the "record as a whole" because it found that the ALJ had not made the factual findings about Preston's workplace conditions necessary to determine whether Preston had established a prima facie case. Thus, the ALJ's analysis of whether the "record as a whole" supported a causal connection between Preston's injury and his work environment was irrelevant to the question remanded by the Board in its first decision: whether Preston's work environment had caused stress that could have aggravated his condition.

BIW also argues that the Board usurped the ALJ's fact finding authority in its first decision when it stated that Dr. Kolkin's testimony and Dr. Bourne's evaluation were not sufficient to rebut the Section 20(a) presumption. This conclusion of the

-17-

Board, however, was a legal conclusion. There was no disagreement between the ALJ and the Board about the substance of the testimony or its credibility. Rather, the Board concluded that, "as Dr. Kolkin opined that stress could aggravate claimant's pre-existing condition," his testimony could not, as a matter of law, sever the causal link between Preston's aggravated symptoms and his work environment. Thus, it could not rebut a Section 20(a) presumption that Preston's injury was caused by his work environment.

Similarly, the Board emphasized that Dr. Bourne's evaluation only addressed Preston's mental state, and that Dr. Bourne had specifically declined to comment on Preston's physical symptoms. It ruled that testimony about Preston's mental state could not rebut a Section 20(a) presumption that Preston's physical injury was caused by his workplace environment. The Board's conclusions about Dr. Kolkin's testimony and Dr. Bourne's evaluation did not usurp the ALJ's authority to make findings of fact; rather they addressed only the legal sufficiency of that evidence to rebut the Section 20(a) presumption.

**B. The Board's Second Decision[3]**

    **1. Timely Notice**

BIW argues that Preston did not file a claim within the time period specified by the Act, and therefore his claim is barred. The Act imposes two separate time limits for filing a workers' compensation claim. In the case of a "traumatic injury," an employee must give notice to his employer within thirty days of the injury. 33 U.S.C. § 912(a). In the case of an "occupational injury" that does not immediately result in disability, the employee must notify the employer within one year after the employee becomes aware, or should have become aware, "of the relationship between the employment, the disease, and the . . . disability." Id. However, "[f]ailure to give such notice [required by § 912(a)] shall not bar any claim under this chapter

---

[3]In its reply brief, BIW argued for the first time that the ALJ's second decision should be vacated because it was based on what BIW calls "coerced findings of fact." BIW says that the critical issue is "whether a decision can stand where a trier-of-fact expressly and unambiguously disagrees with the facts he was forced to find." BIW also tried to elaborate on this argument at oral argument. Pursuant to well-established precedent, we decline to address this argument. "[A]rguments raised in a reply brief are insufficient to preserve a claim on appeal." Frazier v. Bailey, 957 F.2d 920, 932 n.14 (1st Cir. 1992). However, to dispel any notion of unfairness to BIW, we make three points: (1) The Board did not order the ALJ to find that Preston had experienced stress and harassment in the workplace. It simply ordered him to find whether they had occurred. (2) To the extent that the ALJ read the Board's decision as requiring him to find in favor of Preston, he misread the Board's decision. (3) Most importantly, there was substantial evidence in the record to support the ALJ's findings in favor of Preston.

(1) if the employer . . . or the carrier had knowledge of the injury."  33 U.S.C. § 912(d).

In his second decision, the ALJ ruled that BIW had actual knowledge of the aggravation of Preston's condition on September 22, 1997, when Preston and his union representative met with the medical staff of BIW at the shipyard infirmary.  Records from that meeting indicate that Preston "discuss[ed] his tremors and indicat[ed] he is feeling uncomfortable due to coworker pressure and a worsening of his condition."  Preston also indicated that his tremors were "worse when under stress" and that his "coworkers are concerned about their safety and often made fun of him."  This record constitutes substantial evidence that BIW was aware of Preston's injury as early as September 22, 1997.  Thus, the ALJ ruled correctly that Preston's failure to formally notify BIW was excused pursuant to § 912(d).

The ALJ also offered an alternative basis for finding that Preston's claim was not barred, ruling that Preston did not know until August 28, 1998, that his aggravated condition would prevent him from continuing his employment.  On that date, Dr. Carcini evaluated Preston and suggested that he should stop work immediately.  Dr. Carcini also composed a letter on that date to the referring physician stating that "I do feel that he is having a lot of movement problems that prohibit safe operation of a crane at work.  I would like to take him out of work immediately and make

plans for disability or perhaps another type of job." Since this recommendation from Dr. Carcini was the first notice Preston received that he could not continue to work, the ALJ ruled that August 28, 1998, was the date from which the time period for notifying his employer should be measured. See Bechtel Assocs., P.C., v. Sweeney, 834 F.2d 1029, 1033 (D.C. Cir. 1987) ("[T]he limitation period begins only when the employee knows or should know that (1) his injury is causally related to his employment and (2) his injury is impairing his capacity to earn wages."). BIW received a copy of Dr. Carcini's letter, and therefore was aware shortly after August 28, 1998, that the aggravation of Preston's condition was due to his work environment and prevented him from adequately performing his job. Therefore, pursuant to § 912(d), Preston's claim could not be time barred because BIW had actual knowledge of Preston's injury shortly after August 28, 1998, the date on which the limitations period began to run.

### 2. Entitlement to Benefits

BIW contends that Preston is not entitled to benefits because substantial evidence did not support the ALJ's finding in his second decision that Preston was "totally disabled" within the meaning of the Act. BIW argues that the evidence before the ALJ demonstrated that Preston's condition was aggravated by other factors, including his family life and struggle with alcohol abuse, rather than by his working conditions.

The Act defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10). Thus, "[t]o establish a <u>prima facie</u> case of total disability, claimant must show that he is unable to return to his usual employment" because of his injury.[4] <u>Delay</u> v. <u>Jones Washington Stevedoring Co.</u>, 31 Ben. Rev. Bd. Serv. 197 (1998). "Once a claimant demonstrates an inability to return to his job because of a work-related injury, he is considered totally disabled within the meaning of [the Act] and the burden shifts to the employer to prove the availability of suitable alternative employment in the claimant's community." <u>Palombo</u> v. <u>Director, OWCP</u>, 937 F.2d 70, 71 (2d Cir. 1991). In this case, BIW offered no evidence regarding the availability of alternative employment and thus relies only on the argument that Preston did not establish a prima facie case of disability.

The ALJ concluded that the "record leads inescapably to the conclusion that claimant cannot return to work as a crane operator at the employer's shipyard." In making this determination, the ALJ relied on the testimony of Preston's

---

[4]The establishment of a "disability" is distinct from the establishment of an "injury" covered by the Act, which we discussed <u>supra</u> Part III.A. <u>See</u> <u>Bath Iron Works Corp.</u> v. <u>White</u>, 584 F.2d 569, 574 (1st Cir. 1978) ("To establish the right to disability benefits, an employee must show, aided in certain contexts by the [Section 20(a)] presumption, that he has suffered a disabling occupational injury. . . . It must further be established that the injury has produced a 'disability' . . . .").

supervisor, who stated that Preston was subjected to name calling and practical jokes, and that his tremors had become so pronounced that other members of his crew questioned whether Preston could safely perform his work. The ALJ also relied on Dr. Kolkin's testimony that Preston needed a "calm and supporting work environment," and noted that the teasing and ridicule that Preston suffered, combined with normal stresses associated with working in a shipyard setting, did not constitute such an environment. Finally, he relied on the opinions of Dr. Carcini and Dr. David G. Standaert, another of Preston's treating physicians, that Preston's aggravated symptoms prevented him from safely performing the tasks required by his employment. He concluded that "the medical evidence establishes that all of the doctors who have expressed an opinion on [Preston's] ability to operate a crane are in agreement that he cannot safely do so."

This testimony by Preston's supervisor and by several medical experts, along with Preston's own contentions, constitute substantial evidence that Preston cannot perform his usual work at the BIW shipyard. Thus, the ALJ was entitled to find that Preston was totally disabled within the meaning of the Act and was entitled to benefits.

### 3. Calculation of Preston's Average Weekly Wage

The amount of a disabled employee's award of benefits under the Act depends on the average weekly wage that the employee earned while employed. See 33 U.S.C. § 908 (stating formulas for

-23-

calculating disability benefits based on an employee's average weekly wage). Pursuant to 33 U.S.C. § 910, an ALJ can calculate an employee's average weekly wage in several ways. If a claimant was employed for substantially the whole year prior to the injury, § 910(a) instructs that the average annual earnings should be calculated by determining the average daily wage during the period worked, and multiplying that number by either 260, if the employee was a five-day worker, or 300, if the employee was a six-day worker. That annual figure is then divided by fifty-two to determine the average weekly wage. § 910(d)(1). If, however, an employee has not worked substantially all of the previous year, § 910(b) provides that the average weekly wage should be determined by looking at the wages earned by employees of the same class, in the same or similar employment, and in the same or a neighboring location. Where neither § 910(a) or § 910(b) can be properly applied, § 910(c) requires that the average annual wage used to calculate the average weekly wage "shall reasonably represent the annual earning capacity of the injured employee." Section 910(c) does not provide a precise method for determining an employee's annual earning capacity, but it does state that the ALJ should consider the previous earnings of the employee as well as the earnings of similarly situated employees.

In this case, the record included wage information only for the final thirty-nine weeks of the fifty-two weeks preceding the filing of Preston's complaint, and it showed no earnings for

eight of those thirty-nine weeks. Moreover, the record did not indicate whether Preston had been a six-day per week or five-day per week worker. The ALJ reasoned that this partial record was not sufficient to determine Preston's average weekly wage under § 910(a). The ALJ also ruled that the "paucity of evidence as to the wages earned by a comparable employee" prevented him from determining Preston's average weekly wage pursuant to § 910(b). Finding that neither § 910(a) nor § 910(b) could be "reasonably and fairly applied," the ALJ calculated the average weekly wage pursuant to § 910(c). See Story v. Navy Exch. Serv. Ctr., 30 Ben. Rev. Bd. Serv. 225 (1997) (holding that § 910(c) is a catch-all provision to be applied when neither § 910(a) nor § 910(b) can be reasonably and fairly applied).

The ALJ calculated Preston's average weekly wage by taking the wages that Preston earned during the thirty-nine weeks accounted for in the wage report ($20,456.35), and dividing that amount by thirty-one weeks (thirty-nine weeks minus the eight weeks for which the wage report indicated no earnings). This calculation led the ALJ to find that Preston's average weekly wage was $659.88. BIW argues that the ALJ should have calculated the average weekly wage pursuant to § 910(a) by dividing Preston's earnings during the previous thirty-nine week period by thirty-nine, thereby including in the calculation the eight weeks in which, according to the wage report, Preston performed no work. BIW's suggested method would have resulted in an average weekly wage of $524.50.

-25-

"The essential purpose of the average weekly wage determination is to reflect 'a claimant's annual earning capacity <u>at the time of the injury</u>.'" <u>Hall</u> v. <u>Consol. Employment Sys., Inc.</u>, 139 F.3d 1025, 1031 (5th Cir. 1998) (citation omitted) (emphasis in original). The ALJ's determination in this respect is subject to the "substantial evidence" standard. <u>Id.</u> at 1031-32. In this case, the record contained only partial information about Preston's work history over the previous year, with no indication of whether he worked five days or six days per week. Since these factors are critical to the calculation of an average weekly wage under § 910(a), the ALJ was entitled to find that § 910(a) could not be "reasonably and fairly applied." Moreover, in calculating Preston's average weekly wage under § 910(c), the ALJ accounted for the fact that Preston's condition, aggravated or otherwise, might limit his ability to consistently perform a full work week. The thirty-one weeks used in the ALJ's calculation included a wide range of hours worked, from 4.5 to 51.8, and thus presumably included weeks in which Preston took time off because of his aggravated condition. If anything, the ALJ's calculation likely underestimated the amount that Preston could have earned if he had not been dealing with aggravated symptoms caused by his work environment. Therefore, substantial evidence supported the ALJ's calculation of Preston's average weekly wage pursuant to § 910(c).

### 4. Medical Benefits

Finally, BIW argues that the ALJ erred in granting Preston medical benefits pursuant to 33 U.S.C. § 907 because the parties had agreed to litigate the propriety of medical benefits only after litigating whether Preston's injuries were work related. The Board vacated the portion of the ALJ's decision granting any specific medical expenses, ruling that the parties could litigate or reach agreement on the "reasonable necessity of medical treatment" at a future date. However, it affirmed the ALJ's general finding that Preston was entitled to medical benefits under § 907.

We affirm the Board's decision on this issue. Section 907(a) provides that an "employer shall furnish such medical . . . treatment . . . as the nature of the injury . . . may require." Thus, if a claimant is found to have suffered an "injury" as defined under the Act, he is generally entitled to medical benefits pursuant to § 907(a). See Ingalls Shipbuilding, Inc., v. Director, OWCP, 991 F.2d 163, 165 (5th Cir. 1993) (stating that § 907 "entitles a claimant to reasonable and necessary medical services if he suffers a work-related injury"). Our holding does not, however, prevent the parties from further litigating the propriety or reasonableness of any specific medical expense.

**IV.**

For the foregoing reasons, the decision of the Board is **AFFIRMED.**

**SO ORDERED.**