# United States Court of Appeals
## For the First Circuit

No. 08-2235

BATH IRON WORKS CORP.,

Petitioner,

v.

CLAIR MAYNARD FIELDS, et al.,

Respondents.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BENEFITS REVIEW BOARD

Before

Boudin, Gajarsa,[*] and Lipez,
Circuit Judges.

Stephen Hessert, Norman, Hanson & Detroy LLC, with whom C. Lindsey Morrill was on brief, for petitioner.
Marcia J. Cleveland for respondent Clair Maynard Fields.

March 18, 2010

---

[*]    Of the Federal Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.  The Longshore and Harbor Workers' Compensation Act ("LHWCA" or "the Act"), 33 U.S.C. §§ 901-950, establishes a uniform no-fault compensation scheme for covered maritime workers who suffer disability or death in connection with their employment.  Enacted after a series of Supreme Court decisions restricted the application of state workers' compensation laws within the federal maritime jurisdiction, the LHWCA was "designed to ensure that a compensation remedy existed for all injuries sustained by employees on navigable waters, and to avoid uncertainty as to the source, state or federal, of that remedy." Calbeck v. Travelers Ins. Co., 370 U.S. 114, 124 (1962).

Section 20(a) of the LHWCA provides that certain disabilities are presumed to be work-related "in the absence of substantial evidence to the contrary."  33 U.S.C. § 920(a). Relying on that provision, the Benefits Review Board affirmed an award of disability benefits for respondent Clair Maynard Fields. Fields's employer Bath Iron Works ("BIW"), a ship manufacturing facility based in Bath, Maine, now petitions for review of the Board's decision, arguing that it produced "substantial evidence" to rebut the statutory presumption and, alternatively, that the Board exceeded the scope of its authority in vacating an earlier decision of the ALJ that rejected Fields's claim for benefits.  We disagree on both points and therefore deny the petition.

**I.**

Fields alleges that he became disabled while working for BIW. It is undisputed for purposes of this proceeding that Fields has been totally and permanently disabled since June 7, 2002, as the result of a lower back condition that causes intense pain to radiate through his left leg. At the onset of his disability, he was sixty years old and weighed approximately 400 pounds.

Fields was a BIW employee from 1983 to 2002. For most of that time, he worked as a pipefitter at BIW's main shipyard in Bath and as a hose fabricator at the company's East Brunswick Manufacturing Facility. He testified that, prior to 2002, he had experienced a bout of lower back pain while working at the East Brunswick facility in 1995. He attributed the pain to work he was performing at the time, which required him to bend over a table while conducting pressure tests on hoses. Fields sought treatment for the pain from BIW's first aid staff and was prescribed anti-inflammatory medication. BIW also altered Fields's work assignment so that he was no longer required to work at the testing table. Fields reported that his pain cleared up after one to two weeks and that he experienced no other significant back pain, except for a few transitory backaches, until 2002.

In 2001, Fields was transferred from the East Brunswick Facility to the recycling department, which was located in the main shipyard in Bath at the time. The recycling job required Fields to

remove metal materials from large bins, which he accomplished by bending over while supporting himself on the edge of a bin. On April 26, 2002, while Fields was at work, he slipped on ice and fell on his right side and right elbow. He testified that his back began to hurt after the fall, but he "had no leg pain or nothing unbearable." He did not report the incident to BIW's first aid staff at the time.

Soon after Fields fell, BIW moved the recycling department to a new location at the "North Stores." Fields testified that he spent one to two weeks setting up the new work area; he then began dividing his time between two separate tasks. He spent eighty percent of his time at the North Stores sorting materials while sitting at a bench. During the remaining twenty percent of his time, Fields salvaged scrap metal for recycling near the "north gate." Scrap metal would be "dump[ed] in the middle of the floor" near the north gate, and Fields would "bend down on one knee or bend over and pick stuff up, and haul it off, and load it onto another dumpster to be hauled back to the North Stores." Most of the materials were light enough for Fields to carry alone, but he testified that some materials required two people to carry. In contrast to the first recycling job, there was nothing in the north gate area that Fields could use for support while he bent or kneeled.

Fields's pain worsened around the same time he began working near the north gate. He testified that his back pain began to radiate through his left buttock, down the inside of his left leg, and into his toe. Soon, the pain became so intense that Fields had difficulty walking. He testified that he was barely able to walk the one hundred yards between the north gate and the pick-up point for his commute home; he would "have to stop and lean on vehicles because of the pain." Two weeks later, he "was in such pain [he] couldn't walk any more."

At the suggestion of BIW's Chief of Occupational Medicine, Fields was placed out of work on June 10, 2002. He saw a number of different physicians after that point, including two board certified neurosurgeons, Dr. Rajiv Desai and Dr. Julius Ciembroniewicz. The physicians concluded that the immediate source of Fields's pain was a pinched or irritated nerve near the lowest of his lumbar vertebrae. They explained that one of the apertures through which root nerves exit the spinal canal had become constricted, leading to the compression or irritation of the nerves passing through that space. Although they described the physiological origins of that "foraminal narrowing" in somewhat different terms, it is sufficient for present purposes to say that the physicians believed it was likely caused or accelerated by degenerative osteoarthritis.

While Fields was undergoing testing, BIW controverted the compensation claim on the ground that Fields's disability was related to his weight and age rather than his employment. The parties presented their evidence in a benefits hearing before an Administrative Law Judge on May 25, 2005. The ALJ found that Fields had advanced two separate theories of causation: "(1) the fall at work on April 26, 2002 was a work-related injury that resulted in low back-pain and could have caused his herniated disc, and (2) he suffered a work-related aggravation of his underlying back condition in June of 2002, resulting in the onset of disabling radicular symptoms in his left leg."

After hearing the evidence, the ALJ denied Fields's claim for benefits in a written decision dated December 13, 2005. Pursuant to section 20(a) of the LHWCA, 33 U.S.C. § 920(a), the ALJ held that Fields was entitled to a presumption that his injury was causally connected with his employment at BIW. The ALJ also found, however, that BIW had successfully rebutted that presumption by producing substantial evidence that neither Fields's fall nor his work sorting scrap metal near the north gate had caused or aggravated his back condition. The ALJ then weighed the evidence on the record as a whole and concluded that Fields had not established by a preponderance of the evidence that his disability was causally connected to his employment at BIW.

On appeal, a three-judge panel of the Benefits Review Board vacated the ALJ's order.  The Board found that BIW had not produced substantial evidence to sever the causal link between Fields's work sorting scrap metal and his disability.  The Board therefore concluded that BIW's evidence was legally insufficient to rebut the section 20(a) presumption and that Fields's disability was work-related as a matter of law.  In light of its holding, the Board found it unnecessary to address Fields's April 26, 2002 fall.  The case was remanded to the ALJ for further proceedings.

On remand, BIW asked the ALJ to find that Fields's back condition was not work-related.  The ALJ declined to do so, finding that the Board had resolved the issue as a matter of law and that the Board's mandate was binding.  The ALJ then found that Fields was permanently and totally disabled and awarded him $443.73 per week in disability benefits.

BIW appealed the matter a second time, arguing that the Board erroneously re-weighed the ALJ's factual findings in its first decision.  The Board rejected that argument, explaining that its first decision was legal in nature.  BIW did not challenge the ALJ's findings as to the severity and permanency of Fields's disability and the proper amount of benefits.  The Board therefore affirmed the benefits award.  This petition for review followed.

We have jurisdiction to review a final order of the Benefits Review Board. 33 U.S.C. § 921(c). Our role is to examine the Board's decision "for material errors of law or for impermissible departure from the familiar 'substantial evidence' rubric in connection with the Board's assessment of the hearing officer's factual findings." Bath Iron Works Corp. v. U.S. Dep't of Labor ("Knight"), 336 F.3d 51, 55 (1st Cir. 2003) (quoting Barker v. U.S. Dep't of Labor, 138 F.3d 431, 434 (1st Cir. 1998)); see also Prolerized New Eng. Co. v. Benefits Review Bd., 637 F.2d 30, 35 (1st Cir. 1980).

## A. Statutory Framework

When a claim for LHWCA benefits is controverted, it is the claimant's burden to prove the requisite elements of coverage. See Director, OWCP v. Greenwich Collieries, 512 U.S. 267, 281 (1994). Among other things, the claimant must establish a "causal nexus between [his] malady and his employment activities." Sprague v. Director, OWCP, 688 F.2d 862, 865 (1st Cir. 1982) (internal quotation marks and citation omitted); see also U.S. Indus./Fed. Sheet Metal, Inc. v. Director, OWCP, 455 U.S. 608, 615-16 & n.10 (1982). Mustering evidence of causation can prove daunting, especially in cases involving latent injuries and occupational diseases. See Bath Iron Works v. Brown, 194 F.3d 1, 6 (1st Cir. 1999); Cadwallader v. Sholl, 196 F.2d 14, 18 (D.C. Cir. 1952)

(Prettyman, J., dissenting). Congress has therefore created a number of statutory presumptions to ease the claimant's burden. Greenwich Collieries, 512 U.S. at 280.

One such presumption, set forth in section 20(a) of the Act, is relevant here:

> In any proceeding for the enforcement of a claim for compensation under [the Act,] it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim comes within the provisions of [the Act].

33 U.S.C. § 920(a). Courts have long held that the presumption that a "claim comes within the provisions" of the LHWCA includes, a fortiori, a presumption that the worker's injury is causally related to his employment. See Sprague, 688 F.2d at 865; Swinton v. Kelly, 554 F.2d 1075, 1082 (D.C. Cir. 1976). Thus, once section 20(a) is properly invoked, the claimant need not rely upon further proof of causation until the presumption is rebutted.

Courts have implemented the section 20(a) presumption through a burden-shifting framework similar to that used in employment discrimination cases. See Am. Grain Trimmers, Inc. v. OWCP, 181 F.3d 810, 816-17 (7th Cir. 1999) (en banc). At the first stage, the claimant must make out a prima facie case by showing (1) that he suffered physical harm and (2) that a workplace accident or workplace conditions could have caused, aggravated, or accelerated the harm. Bath Iron Works Corp. v. Preston, 380 F.3d 597, 605 (1st Cir. 2004); Am. Stevedoring Ltd. v. Marinelli, 248

-9-

F.3d 54, 64-65 (2d Cir. 2001). Once a claimant establishes a prima facie case, he is entitled to a presumption that his disability is compensable under the Act. Preston, 380 F.3d at 605. The burden then shifts to the employer to produce "substantial evidence" to rebut the presumption. Sprague, 688 F.2d at 865. If the employer successfully carries that burden, the section 20(a) presumption "falls out of the case," id. (internal quotation marks omitted), and the ALJ must weigh all of the record evidence to determine whether the claimant has established the necessary causal link between the injury and employment.[1] See Preston, 380 F.3d at 605; Brown, 194 F.3d at 5. The ultimate burden of proof always lies with the claimant. Greenwich Collieries, 512 U.S. at 281.

## B. Analysis

Because of the nature of the Board's decision below, the April 26, 2002 fall is not at issue here. The sole question is whether there is a causal connection between Fields's disability

---

[1] Although the cases refer to this framework in terms of "shifting" burdens, the "shifts" do not necessarily correspond to the order in which the parties present evidence at a benefits hearing, nor does the framework suggest that a hearing before the ALJ proceeds to steps two and three only after the ALJ has ruled on the adequacy of the claimant's prima facie showing or of the rebuttal evidence of the employer directed at the section 20(a) presumption. The burden-shifting framework is "merely a sensible, orderly way to evaluate the evidence," Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978) (discussing Title VII), in light of the statutory presumption of causation. See Del Vecchio v. Bowers, 296 U.S. 280, 285-87 (1935) (discussing the statutory presumption set forth in section 20(d) of the LHWCA).

and his working conditions in the BIW recycling department in May and June of 2002.

BIW concedes that Fields made out a prima facie claim for relief on the working conditions theory, triggering the presumption that Fields's disability was work-related. See Preston, 380 F.3d at 605. As the Board and the ALJ correctly recognized, BIW must be held liable for the necessary payments under the LHWCA unless it has produced substantial evidence to rebut the section 20(a) presumption. 33 U.S.C. §§ 904, 920(a).

The ALJ held that BIW successfully rebutted the presumption by presenting evidence that Fields's "work as a pipe fitter did not play any significant contributing role in the development of his osteoarthritis." The ALJ relied on the following testimony from Dr. Ciembroniewicz:

> A: My opinion is based on several facts. First, I have been myself several times to BIW, Bath Iron Works, with a purpose of observing different physical activities of BIW employees. I have observed several times the job of a pipe fitter. It is certainly a physically demanding job which requires use of one's back, extremities, but there are hundreds, as a matter of fact over the years thousands, tens of thousands of pipe fitters and they don't claim that their work activity produces arthritis of the back.
>
> The gentleman here is 61 years old. He had osteoarthritis because of his age and second he has been morbidly obese which played extremely important factor [sic.] in accelerating his osteoarthritis. I don't -- it is my opinion that his work as

-11-

                    a pipe fitter did not play any significant
                    contributing factor to development of his
                    osteoarthritis.

          Q:        And by that do you -- by that do you mean
                    you think it's more likely than not that
                    his disease would be the -- at the same
                    level now even if he hadn't worked as a
                    pipe fitter at Bath Iron Works but had a
                    less physically demanding job?

          A:        There is no doubt about it.

    The Board rejected the ALJ's conclusion, emphasizing that

Dr. Ciembroniewicz and the ALJ failed to address whether Fields's

working conditions "render[ed] his pain symptomatic."  As the Board

explained, "[i]f claimant's work caused his underlying condition to

become symptomatic or otherwise worsened his symptoms, claimant has

sustained a work-related injury."  The concurring judge elaborated

by noting that Dr. Ciembroniewicz had addressed "only the disease

process, not whether the condition would have become symptomatic if

claimant had not been bending over or kneeling on the concrete

floor to sort scrap metal."  Indeed, she pointed out, Dr.

Ciembroniewicz's only testimony regarding symptomatology was his

admission that strenuous physical activity can render a

degenerative condition symptomatic.

    BIW asserts that the Board exceeded its authority by

substituting its own factual findings and credibility

determinations for the ALJ's.  BIW is referring here to the Board's

circumscribed review powers.  The Board is statutorily bound to

uphold the ALJ's findings of fact if they are supported by

                                -12-

substantial evidence.[2]  See 33 U.S.C. § 921(b)(3); Jasinskas v. Bethlehem Steel Corp., 735 F.2d 1, 3 (1st Cir. 1984).  That limitation, in turn, informs our review of the Board's decisions. As part of our review for material errors of law, we "make certain that the Board adhered to its statutory standard of review of the ALJ."  CNA Ins. Co. v. Legrow, 935 F.2d 430, 433 (1st Cir. 1991); see also Knight, 336 F.3d at 55.  If the Board exceeds the scope of its authority, we may reverse.  See Air America, Inc. v. Director, OWCP, 597 F.2d 773, 778 (1st Cir. 1979); Burns v. Director, OWCP, 41 F.3d 1555, 1565 (D.C. Cir. 1994).

The question of what caused Fields's disabling back pain is, of course, a question of fact.  See Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 462 n.4 (1968).  If the Board had set aside the ALJ's ultimate finding at step three of the burden-shifting framework that Fields had not proved by a preponderance of the evidence that his pain was work-related, there might be some

---

[2]    It is important to note that the LHWCA "uses the same standard -- 'substantial evidence' -- for two entirely different purposes."  2 Richard J. Pierce, Jr., Administrative Law Treatise § 11.2 (5th ed. 2010).  Here, we are talking about the Benefits Review Board's standard of review.  As noted, the Act also requires the employer to produce "substantial evidence" of non-causation to rebut the section 20(a) presumption.  The two issues are not identical.  A commentator has observed, for example, that "it is quite possible that the employer [could] present[] 'substantial evidence' to rebut the presumption [at step two of the burden-shifting framework], but that the ALJ could still make a finding [at step three of the burden-shifting framework], supported by 'substantial evidence,' that the employee suffered a job-related injury."  Id.

force to BIW's argument. But the Board focused on a different question. It found fault with the ALJ's determination at step two of the burden-shifting framework that BIW had produced sufficient evidence to rebut the section 20(a) presumption. That determination by the ALJ was a legal judgment, subject to plenary review by the Board. See Preston, 380 F.3d at 606-07; Bath Iron Works Corp. v. Director, OWCP ("Harford"), 137 F.3d 673, 675 (1st Cir. 1998).

In effect, the requirement that the employer come forward with "substantial evidence" of non-causation at step two to rebut the presumption of causation sets up an "objective test," which requires the employer to produce "not the degree of evidence which satisfies the [ALJ] that the requisite fact [(non-causation)] exists, but merely the degree which could satisfy a reasonable factfinder." Allentown Mack Sales and Serv., Inc. v. NLRB, 522 U.S. 359, 377 (1998) (discussing judicial review of agency fact-finding); see also Preston, 380 F.3d at 605 n.2 ("'Substantial evidence' is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting Sprague, 688 F.2d at 865)); ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 149 (2d Cir. 2007) ("Courts and commentators are in general agreement that proffered evidence is 'sufficient' to rebut a presumption as long as the evidence could support a reasonable jury finding of 'the nonexistence of the presumed fact.'" (quoting Wanlass v. Fedders

-14-

Corp., 145 F.3d 1461, 1464 (Fed. Cir. 1998))). The determination that the employer has (or has not) produced sufficient evidence is "not dependent on credibility." Harford, 137 F.3d at 675; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993) ("In the nature of things, the determination that a defendant has met its burden of production [in a Title VII case] can involve no credibility assessment."). BIW's claim that the Board improperly displaced the ALJ's credibility findings is without merit.[3] The Board was entitled to independently examine the record and to exercise its own judgment as to whether the substantial evidence standard was met. Cf. Penobscot Air Servs., Ltd. v. FAA, 164 F.3d 713, 718 & n.2 (1st Cir. 1999).

The Board did precisely that when it determined that BIW had not rebutted the presumption of causation. In the context of section 20(a), the substantial evidence standard requires the employer to "introduce 'such relevant evidence as a reasonable mind might accept as adequate' to support a finding that workplace conditions did not cause the accident or injury." Rainey v. Director, OWCP, 517 F.3d 632, 637 (2d Cir. 2008) (internal quotation marks and citation omitted). The Board held that BIW's evidence was legally insufficient to meet that standard because it

---

[3]     Indeed, we have previously rejected the same argument on materially indistinguishable facts. See Preston, 380 F.3d at 607 (holding that Board "did not usurp the ALJ's authority to make findings of fact" when it concluded that BIW's evidence was legally insufficient to rebut the section 20(a) presumption).

-15-

simply did not address the cause of the relevant "injury" within the meaning of the LHWCA -- Fields's disabling pain.

The Board's focus on the distinction between Fields's osteoarthritis and his pain was sound. A claim for LHWCA benefits can be based on a work-related activation or aggravation of the employee's symptoms, even if the disease itself is not work-related. As we explained in Gardner v. Director, OWCP, 640 F.2d 1385, 1389 (1st Cir. 1981), "[w]hether circumstances of [the claimant's] employment combined with his disease so to induce an attack of symptoms severe enough to incapacitate him or whether they actually altered the underlying disease process is not significant. In either event his disability would result from the aggravation of his preexisting condition." See also Marinette Marine Corp. v. OWCP, 431 F.3d 1032, 1035 (7th Cir. 2005) (The LHWCA "does not require that a later injury fundamentally alter a prior condition. It is enough that it produces or contributes to a worsening of symptoms."); Gooden v. Director, OWCP, 135 F.3d 1066, 1069 (5th Cir. 1998) (holding that the ALJ "erroneously focused on the origins of [the claimant's] underlying heart condition, rather than on the ultimate heart attack").

In this case, Dr. Ciembroniewicz acknowledged that it is "possible" for physical activity to trigger radiating pain in an osteoarthritic individual. He did not go on to say that, in his judgment, such a connection was unlikely in Fields's case. BIW

-16-

claims in its reply brief that Dr. Ciembroniewicz "testified that Mr. Fields's current symptoms are wholly the result of his severe degenerative problems, which are the result of morbid obesity and his age." But that is not what Dr. Ciembroniewicz said. He said only that Fields's <u>osteoarthritis</u> was wholly attributable to weight and age. He said nothing to suggest that Fields's disabling <u>pain</u> was unrelated to his employment. In its decision vacating the first decision of the ALJ, the Board fairly criticized the ALJ for missing this critical distinction.[4]

---

[4] Indeed, the ALJ's entire decision is fraught with ambiguity on this issue. In finding that Fields had not proved his case by a preponderance of the evidence (at step three of the burden-shifting framework), the ALJ noted:

> Neither Dr. Desai nor Dr. Ciembroniewicz [was] specifically asked whether the Claimant's work during May 2002, when he did more kneeling and bending than in the past, could have aggravated the underlying back condition that ultimately became disabling by June 7, 2002. Since BIW rebutted the section 20 presumption, the void in the record left by this unaddressed question does not assist the Claimant in meeting his burden of proving causation by a preponderance of the evidence, and it is not appropriate for the trier of fact to close evidentiary gaps with his own lay speculation.

We are not certain from this discussion whether the ALJ's reference to the lack of proof on causation refers to the causal link between the working conditions at BIW and Fields's osteoarthritis, his disabling pain, or both. Also, while the void in the record referred to by the ALJ might have been harmful to Fields if he had to meet his ultimate burden of establishing causation at step three of the burden-shifting framework, it was fatal to BIW's case at step two when it had to produce substantial evidence to overcome the statutory presumption.

None of BIW's other evidence addressed the connection between Fields's pain and his working conditions. Dr. Desai, like Dr. Ciembroniewicz, admitted that "almost any activity, in theory, could initiate symptoms if there's a disc herniation." He offered no opinion about the likelihood of such a connection in Fields's case. BIW's evidence was thus consistent with Fields's theory of causation. Under such circumstances, a "reasonable mind" could not conclude from the evidence that Fields's pain was unrelated to his working conditions. See Preston, 380 F.3d at 606-07; Bath Iron Works Corp. v. Director, OWCP ("Shorette"), 109 F.3d 53, 56 (1st Cir. 1997).[5] The Board properly identified this legal error in the ALJ's determination that BIW had rebutted the section 20(a) presumption and corrected it on appeal.

BIW resists this conclusion, arguing that the Board erroneously required it to "rule out any possible causal relationship between the claimant's employment and his condition." Shorette, 109 F.3d at 56. That is not a fair reading of the Board's decisions. The Board focused on whether BIW's evidence was

_____

[5] In Shorette, we held that evidence that the employee had developed asbestosis prior to his maritime employment was insufficient to rebut the section 20(a) presumption because it did not address the employee's theory that subsequent exposure to asbestos had aggravated his conditions. See 109 F.3d at 55-56. Similarly, we held in Preston that a psychiatrist's opinion regarding the cause of the employee's psychological symptoms was insufficient to rebut the section 20(a) presumption because it did not address the alleged connection between the employee's working conditions and his physical symptoms. See 380 F.3d at 607.

-18-

material to Fields's claim that the working conditions at BIW had caused his disabling pain, not on the degree of certainty expressed by the physicians. It noted that Dr. Ciembroniewicz and Dr. Desai concentrated on the connection between Fields's working conditions and his underlying disease, which the Board viewed as beside the point. It further noted that when the physicians briefly addressed the possible relationship between physical activity and osteoarthritis-related pain, they acknowledged that the two are sometimes linked. For whatever reason, the physicians never went on to express an opinion about whether such a linkage was likely in Fields's case. The ALJ's determination that BIW had rebutted the presumption of causation was a legal error. The Board correctly concluded, based on the evidence presented by BIW, that BIW had not produced "substantial evidence" to rebut the presumption of causation between Fields's working conditions and his pain. See Wheatley v. Adler, 407 F.2d 307, 313 (D.C. Cir. 1968) (en banc) (holding that the presumption was not rebutted where the employer's medical expert "was not able to say, one way or the other, either as a reasonable medical certainty or with any other estimate of probability, that [work activity] was not the factor bringing on the [employee's] heart seizure").

**PETITION DENIED**.