Eddie R. WALKER, Petitioner,

v.

ROTHSCHILD INTERNATIONAL STEVEDORING CO. and American Motorists Insurance Company, Respondents.

Nos. 74–1340, 74–1494.

United States Court of Appeals, Ninth Circuit.

Oct. 31, 1975.

Rehearing Denied Jan. 12, 1976.

Lee A. Holley and Martin P. Detels, Jr. (argued), Detels, Draper & Marinkovich, Seattle, Wash., for petitioner.

Charles Preston (appeared), U. S. Dept. of Labor, Washington, D. C., for respondents.

OPINION

Before ELY and HUFSTEDLER, Circuit Judges, and TAYLOR, District Judge.*

PER CURIAM:

This matter is before this Court on the petition of E. R. Walker and the petition of Rothschild International Stevedoring Co. (employer) and American Motorists Insurance Company (insurance carrier) for a review of the final decision of the U. S. Department of Labor Benefits Review Board (Board) as authorized under and pursuant to Title 33 U.S.C. § 921(c).

* For the District of Idaho, sitting by designation.

The matter is within the provisions of the Longshoremen's and Harbor Workers' Compensation Act, Title 33 U.S.C. § 901 *et seq.*

By an Order of this Court, filed on August 9, 1974, the petitions for review were consolidated and for the purposes of this appeal, Eddie R. Walker is deemed petitioner and Rothschild International Stevedoring Co. and American Motorists Insurance Company are respondents.

The Benefits Review Board, after reviewing the record as a whole, agreed with the Administrative Law Judge (Law Judge) that petitioner was not compensably disabled from and after November 3, 1970, the time his employer ceased paying benefits. However, the Board did not agree with the Law Judge that petitioner's claim had not been timely filed. The Board decided that in the circumstances of this case, petitioner's claim was timely filed.

■ The findings of the Board are to be accepted by this Court unless they are unsupported by substantial evidence in the record considered as a whole. *O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 504–508, 71 S.Ct. 470–472, 95 L.Ed. 483 (1951); *Banks v. Chicago Grain Trimmers Association,* 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed.2d 30 (1968); *Portland Stevedoring Company v. Johnson,* 442 F.2d 411 (9th Cir. 1971).

We have carefully reviewed the entire record in this matter and it is our opinion that the decision of the Board must be affirmed.

Petitioner sustained an accidental injury in the course of his employment as a stevedore with his employer on March 19, 1970. He was first examined by Dr. Harry L. Levitt, an orthopedic surgeon, on April 3, 1970 and Dr. Levitt treated petitioner for his complaints until November 3, 1970. On November 4, 1970, Dr. Levitt advised petitioner's then attorney that petitioner was not responding to treatment and that there were no objective findings from his examinations of petitioner indicating why he should

have such persistent symptoms. The doctor discharged petitioner from his care and advised him he should seek the care of another physician. On the same date, Dr. Levitt advised the respondent insurance carrier to the same effect. On November 9, 1970, the insurance carrier notified the Board of Employees' Compensation, U. S. Dept. of Labor, that, based on Dr. Levitt's report, it was not going to pay any further compensation until it had further medical information to substantiate his condition. Petitioner was advised by the office of the Deputy Commissioner that the insurance carrier had suspended payments of compensation, the last payment being on November 3, 1970.

On October 21, 1971, Dr. Albert L. Cooper, who was at that time petitioner's physician, filed an "Attending Physician's Report", BEC–204, dated October 10, 1971, with the Deputy Commissioner's office. This report referred to the date petitioner was injured and disabled for work. It also stated that the periods of disability were from April 15, 1970 to October, 1970 and from March 17, 1971 to the date of the report. October, 1970 was the date stated that petitioner was able to return to light work and no date was given as to when he could return to his regular occupation. On December 19, 1971, petitioner filed a Form BEC–203, titled "Employee's Claim for Compensation".

The respondents contend that petitioner's claim was not filed until the date he filed his Form BEC–203, more than one year after the date of the last payment for compensation on November 3, 1970. Petitioner argues that Form BEC–204, filed by Dr. Cooper, was in his behalf and complied with the statutory requirements for filing a claim. Section 13(a) of the Act (33 U.S.C. § 913(a)), prior to the 1972 amendments, provided:

"The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury, . . . except that if payment of compensation has been made without an award

on account of such injury . . . a claim may be filed within one year after the date of the last payment."

■ The Board concluded that the Act should be liberally construed for the filing of Workmen's Compensation claims and that since a Form BEC–204 was filed by petitioner's physician prior to the one year limitation, the claim was timely filed. In the circumstances of this case, we agree. See *McKinney v. O'Leary,* 460 F.2d 371 (9th Cir. 1972) wherein this Court recognized that a claimant might even file a claim by telephone with the Deputy Commissioner, or a member of his staff, if that person then placed a memorandum in the file and thereafter an insurance carrier paid the claimant temporary total disability for a period of time. The Court stated at p. 373:

"Various types of informal writings have been liberally construed in determining whether a claim has been filed pursuant to 33 U.S.C. § 913(a) . . We agree with the parties that under the special circumstances of this case a claim was timely filed in compliance with the Act and that appellant's failure to file a formal written claim within one year does not bar consideration of his claim."

Although petitioner vigorously contends that from and after the date of his injury and November 3, 1970 he was unable to work because of pain, the several doctors who examined and treated him, with the exception of one, were unable to make any objective findings which would explain the symptoms complained of by petitioner and which would prevent him from doing longshoring work as a result of the injury on March 19, 1970. He was not only examined and treated by specialists in orthopedics, but also examined by a neurologist whose report was negative.

At the hearing before the Law Judge, medical testimony was given by three doctors. One doctor who practices osteopathic medicine testified in behalf of petitioner. This doctor did not see petitioner until approximately two and one-half years after the accident. Her testimony was to the effect that she found some muscle spasm which was disabling and that it was very *possible* that the accident could have caused the condition. There was no testimony from this doctor that the accident *probably* caused the injury.

Dr. Levitt, a practicing orthopedic surgeon for 38 years, was the first doctor to see petitioner on April 3, 1970 and continued to examine and treat him until November 3, 1970. At the hearing, Dr. Levitt testified that there were no objective findings on which he could place an opinion that the petitioner had any permanent disability as a result of the March 19, 1970 injury, either in the examinations he made, the X-rays he took, nor with the help of a neurosurgeon.

Dr. Walter S. Kimball, an orthopedic surgeon for 23 years, testified that he examined petitioner on April 4, 1972 and as a result of the history he took and the examination he made, he found little objective findings that petitioner was disabled, that his disability would not be more than 1% and that he could be returned to some gainful occupation.

Dr. David Anderson, an orthopedic surgeon, examined petitioner on October 12, 1971 and reported, in effect, that his examination did not corroborate to any degree petitioner's apparent pain symptom complex.

■ We do not deem it necessary to set forth in detail all the medical testimony and reports contained in the record. Suffice it to say that the findings of the Law Judge and the Review Board, in regard to petitioner's disability, are supported by substantial evidence in the record as a whole.

It appears from the record that the Law Judge, in making his findings and conclusions, took into consideration all the testimony given at the hearing, as well as all medical reports of other doctors submitted to him. In this case, the Administrative Law Judge, as the trier of the facts, is the judge of the credibili-

ty of the witnesses, both lay and medical. *Banks v. Chicago Grain Trimmers Association,* supra.

In *Mid-Gulf Stevedores, Inc. v. Neuman,* 333 F.Supp. 430 (E.D.La.1971), the court observed . . . " 'with respect to any conflict in the medical testimony offered by the parties, the Commissioner [Law Judge] is not bound to accept the opinion or theory of any particular medical examiner.' "

Petitioner further claims that the Law Judge committed misconduct at the hearing in that he unduly restricted the amount and type of cross-examination by petitioner's counsel. We do not find from the record that the Law Judge abused his discretion or acted arbitrarily. We are of the opinion that the Law Judge conducted the hearings in a fair and impartial manner.[1]

The decision of the Benefits Review Board is affirmed.

HUFSTEDLER, Circuit Judge (dissenting):

I cannot agree with the majority that substantial evidence in the record considered as a whole supports the Board's disallowance of benefits to the petitioner. We must be mindful that the Supreme Court requires us to reweigh the evidence in these cases; we cannot simply apply a substantial evidence test. (*Universal Camera Corp. v. N. L. R. B.* (1951) 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.)[1]

The only evidence that tends to support the Board's determination that Walker was not disabled was the testimony of three doctors, Levitt, Kimball and Anderson, that none of them could find adequate objective findings upon which to base a disability opinion.[2] When this testimony is placed in context, however, the significance of the lack of objective findings is dissipated.

Common experience demonstrates that soft tissue injuries in the back cause pain and disability even when objective findings are marginal and, on occasion, even nonexistent. It is, of course, always possible that Walker has some compensation neurosis; but if he does, that neurosis is compensable as well. There is no indication whatever in the record that this man who worked as a longshoreman for

---

1. In footnote 1 of Judge Hufstedler's dissenting opinion, she quotes some of the language of Mr. Justice Frankfurter in speaking for the Court in *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The majority here believes that Mr. Justice Frankfurter's remarks, especially those taken from 340 U.S. at 490, 71 S.Ct. 456, are strongly supportive of the majority's opinion in the present case. In the light of the record now before us, the majority cannot conscientiously accept the proposition that such record, in the words of Mr. Justice Frankfurter, "clearly precludes the Board's decision from being justified from a fair estimate of the worth of testimony of witnesses or its informed judgment on matters within its special competence or both." 340 U.S. at 490, 71 S.Ct. at 466.

1. As Mr. Justice Frankfurter, speaking for the Court, observed:

"Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitively precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. This is clearly the significance of the requirement in both statutes that courts consider the whole record. . . ." (340 U.S. at 487–88, 71 S.Ct. at 464.)

"The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." (340 U.S. at 490, 71 S.Ct. at 466.)

2. Dr. Levitt said there were "no objective findings"; Dr. Kimball said he turned up "little objective findings" of disability and Dr. Anderson testified that he could not ascertain "why [Walker] claims to be disabled."

many years was malingering or lying, or that he did not have the desire to work that he expressed under oath. Perhaps Walker could have fooled one doctor, but I seriously doubt that he could have fooled three (Behrans, Cooper, and Gray).

Dr. Levitt had certified that Walker was disabled; he never withdrew that certification. Indeed, in his report dated August 31, 1970 (only two months before Walker's benefit payments were stopped), Levitt indicated that he did not know when Walker would be likely to return to work. Levitt did not discharge Walker; rather, he referred him to other doctors for treatment because he did not know what to do for him. At the time he gave the "no objective findings" testimony, Dr. Levitt had not treated Walker for two and one half years. Dr. Kimball did not testify that there were no objective findings. He testified that his disability "would not be more than one per cent." Moreover, Dr. Kimball was not a treating doctor and his conclusions were based upon a perfunctory examination. On cross-examination, it also became clear that Kimball had not taken into account the character of the work performed by longshoremen. Finally, Kimball admitted that "it's possible [Walker] pulled a muscle and developed some fibrosis in the area accounting for resistant symptoms." Dr. Anderson based his conclusions on a one-day examination of Walker. Although he found no atrophy of muscle, he did find a "rather profound" weakness in the upper arm. He also admitted that he "cannot specifically tell you whether or not he is able to work."

I turn to the evidence supporting Walker's claim of disability. Dr. Behrans, who had been treating Walker since 1972, testified that she had observed muscle spasms on both the right and the left sides of Walker's back and further that she had noticed splinting of his back muscles when he moved. She concluded that Walker was suffering from a myofascial sprain or strain, an injury to the soft tissue of the back.

Soon after beginning treatment, she took Walker off the muscle relaxants and pain medication prescribed by an earlier physician; as a result, when she put Walker through passive motion tests, assisting him as he moved his muscles through certain positions, he experienced substantial pain and increased muscle spasms. Behrans concluded that the injury was probably so severe that Walker would have trouble moving his muscles by himself as required in his work as a stevedore. While hesitating to apply a percentile rating system because of its arbitrary nature, Behrans indicated that she judged Walker's disability to be 50 percent; she added, however, that Walker seemed to be improving somewhat under her care.

Dr. Cooper, who treated Walker beginning in October 1971, had repeatedly expressed the view that Walker suffered from sprain and strain of muscles and ligaments in his back and from fibromyositis involving the right rhomboid muscle. Contrary to the finding of the administrative law judge, Cooper (like Behrans) observed muscle spasms. Cooper expressed his judgment that Walker was at least partially disabled (1) in an attending physician's report dated October 11, 1971 and (2) in a letter dated June 5, 1972. (While only one of these statements is referred to in the findings of fact, seemingly both documents were included in the file considered as part of the record by the administrative law judge in April 1973.)

Finally, there is Walker himself, who indicated that he had been working as a longshoreman for twelve years at the time of his accident. He described his pain and his reactions to treatment. He also testified that he sincerely desired to return to work.

Of course, an administrative hearing officer may disbelieve testimony of medical experts, but he cannot, consistently with his duty, ignore or fail to evaluate the full range of medical evidence given both at the hearing and in the written record. He disregarded the evidence supplied by Walker's own physi-

cians in deeming it to be less reliable in principle than the information supplied by employer-approved panel doctors. The discrepancy between Levitt's testimony and his earlier records is nowhere reflected in the findings of fact; nor was consideration given to the fact that Walker's treating physicians were more intimately acquainted with his condition than were one-time consultants like Drs. Kimball and Anderson. The administrative law judge seems to have gone out of his way to discount the observations of Dr. Behrans, who had seen Walker most recently and had been most successful in treating his injury. Moreover, the administrative law judge did not evidence an understanding of the remedial purpose of the Longshoremen's and Harbor Workers' Compensation Act.

The Fifth Circuit has ruled that, in implementing the generous spirit of concern of Congressional policy, all doubtful questions of fact are to be resolved in favor of the injured employee and that the standard of proof to be applied by the hearing examiner in such proceedings is to be somewhat less stringent than a preponderance of the evidence. (*Strachan Shipping Co. v. Shea* (5th Cir. 1969), 406 F.2d 521, 522.)

In my view, the Board recognized verbally, but did not apply, the appropriate standard of review. It simply isolated the few items of testimony that conceivably could have supported the administrative law judge's findings, without evaluating the context in which those opinions were given or the other evidence in the record. That approach was flatly rejected in *Universal Camera Corp., supra.* The fact that "irrationality" is now an alternative basis for overturning a hearing officer's determination (*e. g., O'Keefee v. Smith, Hinchman & Grylls Ass'n, Inc.* (1965), 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895) in no way dilutes the requirement to evaluate all the evidence.

The Board's failure to mention either Dr. Behran's testimony or the June 1972 letter of Dr. Cooper indicating his diagnosis of Walker's disability suggests strongly that the Board erred in carrying out its reviewing function.

In short, the Board's decision is against the great weight of the evidence, the only testimony that can be cited as supporting the Board's conclusion is insubstantial, and when that evidence is viewed in the light of the whole record, any apparent support for the nondisability finding vanishes.

I would reverse and remand.