**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LLOYD RHINE,

                    *Petitioner,*

v.

STEVEDORING SERVICES OF AMERICA;
HOMEPORT INSURANCE COMPANY;
and DIRECTOR OF WORKERS'
COMPENSATION PROGRAMS,

                    *Respondents.*

No. 08-73370

Benefits Review
Board Nos.
07-0935,
07-0935A
OWCP-1 No.
14-126603

OPINION

On Petition for Review of a Decision and
Order of the Benefits Review Board

Argued and Submitted
October 7, 2009—Portland, Oregon

Filed March 5, 2010

Before: Diarmuid F. O'Scannlain and N. Randy Smith,
Circuit Judges, and Ronald M. Whyte,* District Judge.

Opinion by Judge Whyte

---

*The Honorable Ronald M. Whyte, United States District Judge for the
Northern District of California, sitting by designation.

## COUNSEL

Charles Rabinowitz, Law Offices of Charles Rabinowitz, of Portland, Oregon; Joshua T. Gillelan II, Longshore Claimants' National Law Center, Washington, DC, for the petitioner.

John Randall Dudrey, Williams Frederickson, LLC, of Portland, Oregon, for the respondents.

## OPINION

WHYTE, District Judge:

Petitioner Lloyd Rhine ("Rhine") seeks review of a decision of the Benefits Review Board ("BRB" or "Board") under 33 U.S.C. § 921(c) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). We review the Board's decision for "errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." *Todd Shipyards Corp. v. Black,* 717 F.2d 1280, 1284 (9th Cir. 1983) (quoting *Bumble Bee Seafoods v. Director, OWCP*, 629 F.2d 1327, 1328 (9th Cir. 1980). "The BRB must accept the ALJ's findings unless they are contrary to the law, irrational, or unsupported by substantial evidence." *Id.* We conclude that the BRB and ALJ made no errors of law and rendered factual determinations supported by substantial evidence. We therefore affirm.

**[1]** We first briefly dispatch a concern over jurisdiction. Stevedoring Services of America and Homeport Insurance (collectively "SSA") argue in their Answering Brief that this court's jurisdiction "is not free from doubt" because Rhine did not name the director of the Office of Worker's Compensation Programs ("OWCP") as a respondent as required by Federal Rule of Appellate Procedure 15(a)(2)(B).[1] The OWCP

---

[1]The respondents did not assert lack of jurisdiction at oral argument on the appeal.

does not appear in the petition, but it was served and appeared as a respondent on the day the petition was filed. When SSA noted in its Answering Brief that the OWCP was not named as a respondent in the petition, Rhine moved to amend the caption to add the OWCP as a respondent. Because by that time the OWCP was already listed on the caption, the court denied Rhine's motion to amend as moot. Because petitioner provided notice to the OWCP and the OWCP subsequently appeared as a respondent, the court in effect found that Rhine had complied with Rule 15(a)(2)(B). Therefore, we have jurisdiction pursuant to 33 U.S.C. § 921(c).

On October 22, 1997, Rhine was injured in the course of his employment as a B-registered longshoreman. After an initial hearing before the ALJ and a remand from the BRB, the ALJ determined in a second hearing that Rhine's average weekly wage was $877.96, the average wage in 1997 of all "B-registered" longshoremen (known as the "Pacific Maritime Association Average" or "PMA Average"). Rhine makes two arguments on appeal. First, he contends that the ALJ committed both legal and factual errors in calculating his average weekly wage under 33 U.S.C. § 910(c). Second, he argues that the BRB committed legal error by reducing his compensation by the amount he could have earned in non-longshore work because taking such work could have jeopardized his status as a longshoreman.

### A. *Calculation of Average Weekly Wage*

As for the ALJ's purported legal error calculating Rhine's average weekly wage, we conclude that the ALJ properly applied 33 U.S.C. § 910(c). Rhine contends that the ALJ's use of the 1997 PMA "B" Average was error and underestimated his earnings because: (1) it was based on average earnings for all "B" workers as of December 31, 1997 including some who had few hours as longshore workers; (2) it included Rhine's total earnings for the year even though he was injured the majority of time that he was a "B" worker; (3) it did not

include holiday and vacation pay for some workers; (4) it excluded pay guarantee income for all workers; and (5) it did not adjust the "B" earnings for a mid-year contract wage increase. Rhine argues that using the 1997 PMA "B" average resulted in an inflexible mathematical calculation that has no basis in section 910(c) or the cases interpreting it. Petitioner misconstrues the cases he cites for the proposition that the components of compensation which he claims were omitted in determining Rhine's average weekly wage must be included in an ALJ's calculation of an employee's average weekly wage under section 910(c). In *Palacios v. Campbell Industries*, 633 F.2d 840, 843 (9th Cir. 1980), we held that earning capacity after the date of injury may, not must, be considered in the ALJ's determination of an employee's wages. *See also Nat'l Steel & Shipbuilding Co. v. Bonner*, 600 F.2d 1288, 1293 (9th Cir. 1979) (refusing to hold as a matter of law that an ALJ must assume that an employee's earlier, lower wages would have continued when the employee started higher paying work shortly before being injured). And in *Sproull v. Director, OWCP*, 86 F.3d 895, 899 (9th Cir. 1996), we upheld an ALJ determination that incorporated vacation pay into a compensation award, but we did not require that vacation pay be included. Similarly, in *Fireman's Fund Insurance Co. v. Van Steene*, 120 F.2d 548, 550 (9th Cir. 1941), we upheld an ALJ award that determined a worker's average weekly wage based in part on the wages of other employees, but set forth no principle that an ALJ could not consider time off due to temporary injuries when performing a wage calculation. Finally, in *McMennamy v. Young & Co.*, 21 BRBS 351, 353-54 (D.O.L. Ben. Rev. Bd. 1988), the BRB interpreted the meaning of "wages" under 33 U.S.C. § 902(13) but did not consider what compensation must factor into an ALJ's calculation under section 910(c).

**[2]** Section 910 provides three alternative methods for calculating an employee's average annual earning capacity. 33 U.S.C. § 910(a)-(c). In contrast to subsections 910(a) and (b), subsection 910(c) "applies to intermittent and irregular

employment, when application of the mathematical formulas provided in [subsections 910(a) and (b)] would be unreasonable or unfair, or when insufficient evidence is presented at the hearing to permit proper application of [subsections 910(a) or (b)]." *Palacios*, 633 F.2d at 842. The language of subsection 910(c) also reflects that analysis under it is not meant to be strictly mathematical. It merely requires that the ALJ give regard to evidence of the employee's annual earning capacity in determining a reasonable average wage. 33 U.S.C. § 910(c). Under subsection 910(c), then, the ALJ has more flexibility in determining an employee's reasonable annual earning capacity than when applying subsections 910(a) and 910(b). Ultimately, under subsection 910(c), the average annual earnings "shall be such sum as . . . shall reasonably represent the annual earning capacity of the injured employee." *Id.* If the ALJ's determination of Rhine's wage under section 910(c) is supported by substantial evidence in the record, then it must be affirmed. *Lockheed Shipbuilding v. Director, OWCP*, 951 F.2d 1143, 1146 (9th Cir. 1991).

The substantial evidence test for upholding factual findings is "extremely deferential to the factfinder." *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Moreover, "our task is not to reweigh the evidence, but only to determine if substantial evidence supports the ALJ's findings." *Lockheed Shipbuilding*, 951 F.2d at 1146.

**[3]** In considering the evidence before him, the ALJ found Rhine's own testimony unreliable and self-serving and noted that other testimony in support of Rhine contradicted the concrete earnings data to which the ALJ could refer. The ALJ also called the PMA Average data "far from perfect," noting that its earnings did not match up with Rhine's injury date and lacked hours data for the individual included workers. Although the PMA Average data had flaws, upon consideration of all available evidence, the ALJ concluded that it rep-

resented the best estimate of Rhine's average wages. Given the evidence before the ALJ, a reasonable mind could have concluded that the PMA Average adequately represented Rhine's annual earning capacity. Therefore, the ALJ properly found, based on substantial evidence, that $877.96 represented Rhine's average weekly wage.

### B.   *Alternative Employment*

**[4]** Rhine's second argument is that the ALJ committed legal error by reducing his average wage by the amount he could have earned in alternative non-longshore employment. SSA asserts initially that Rhine has not preserved this argument for appellate review because the BRB only considered the issue in its first decision. SSA is incorrect. The BRB's first decision remanded the case to the ALJ for further factual determinations and therefore was not a final, appealable order. *Bish v. Brady-Hamilton Stevedore Co.*, 880 F.2d 1135, 1137 (9th Cir. 1989). In *National Steel & Shipbuilding Co. v. Director, OWCP*, 626 F.2d 106, 107-08 (9th Cir. 1980), we dismissed as premature an appeal from an order of the Benefits Review Board of the Department of Labor affirming in part and remanding in part a disability benefits award made under Longshoremen's and Harbor Workers' Compensation Act because the award was not an appealable "final order" within the meaning of the section of the Act governing which board orders are appealable. Other circuits have concluded that under the LHWCA and the Administrative Procedure Act, previous non-final orders of the BRB are properly before us only when the final BRB order is appealed. *Burns v. Director, OWCP*, 41 F.3d 1555, 1561-62 (D.C. Cir. 1994); *Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941, 943-44 (5th Cir. 1991). We adopt this rule today. Accordingly, the BRB's first decision is properly before us in this case.

**[5]** Under the LHWCA, harbor workers are compensated according to the impact of a work-related injury on their earning capacity. *Bumble Bee Seafoods*, 629 F.2d at 1328. In this

case, the ALJ concluded on the basis of a vocational survey that alternative employment was available to Rhine as a parking-lot cashier and security guard.[2] Rhine argues that the ALJ should not have concluded that suitable alternative employment was available because if Rhine had taken one of the alternative jobs he might have lost his valuable longshore registration.

[6] Rhine cites no case or rule which holds that Rhine's possible loss of his longshoreman status rendered the substitute employment inadequate. To the contrary, our case law reflects that the availability of alternative employment is determined by reference to two criteria: the claimant's physical abilities and the economic availability of particular jobs in the market. *See Bumble Bee Seafoods*, 629 F.2d at 1330. Furthermore, the statute is clear that permanent partial disability, when it does not fall within a set of enumerated injuries, is compensable at 66 % of "the difference between the average weekly wages of the employee and the employee's wage-earning capacity thereafter in the same employment *or otherwise,* payable during the continuance of partial disability." 33 U.S.C. § 908(b)(21) (emphasis added). Under the statute and our case law, a claimant's preferences, or the possible employment consequences of taking an available job, are not relevant.

[7] In *Berezin v. Cascade Gen., Inc.*, 2000 WL 35364100 (D.O.L. Ben. Rev. Bd. Nov. 14, 2000), the BRB considered

---

[2]SSA seeks judicial notice of a declaration filed in another pending case, apparently contesting the BRB's conclusion that SSA had deprived Rhine of suitable alternate employment at its facility. This is a factual determination that the SSA did not cross-appeal after it was decided by the BRB. SSA additionally does not argue that the BRB's ruling was incorrect, or that substantial evidence could not support a finding that SSA withdrew Rhine's employment at its facility. That factual dispute is not relevant to the legal issue raised by Rhine. Whether the SSA so withdrew Rhine's employment is therefore not before this court. SSA's request for judicial notice is denied. Rhine's motion to strike is denied as moot.

a claimant's similar argument that, because he wished to return to longshore work, he need not diligently seek alternative employment. The BRB rejected that argument, writing that "[c]laimant may not retain entitlement to total disability benefits merely by alleging that he did not seek work because he was unsure if he would be hired, or because he preferred another type of work to that identified by the employer." *Id.* at *5. Similarly, Rhine cannot retain total disability benefits here because of an unrelated — though unfortunate — possible consequence of accepting alternative work.

AFFIRMED.