**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HAWAII STEVEDORES, INCORPORATED;
SIGNAL MUTUAL INDEMNITY
ASSOCIATION, LTD., Insurance
Carrier,

             *Petitioners,*

        v.

LESLIE OGAWA; DIRECTOR,
OFFICE OF WORKERS COMPENSATION
PROGRAMS,

            *Respondents.*

No. 09-73041

BRB No.
08-0790

OPINION

On Petition for Review of an Order of the
Benefits Review Board

Submitted June 10, 2010*
Pasadena, California

Filed June 22, 2010

Before: Dorothy W. Nelson and Ronald M. Gould,
Circuit Judges, and James S. Gwin, District Judge.**

Opinion by Judge Gould

---

  *The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

  ** The Honorable James S. Gwin, United States District Judge for the
Northern District of Ohio, sitting by designation.

**COUNSEL**

James P. Aleccia, Aleccia, Conner & Socha, Long Beach, California, for the petitioners.

Joshua T. Gillelan II, Longshore Claimants' National Law Center, Washington, DC, and Steven M. Birnbaum, San Rafael, California, for the respondent.

---

**OPINION**

GOULD, Circuit Judge:

Hawaii Stevedores, Inc. petitions for review of a decision of the Benefits Review Board (BRB) affirming an Administrative Law Judge's (ALJ) grant of disability benefits to Leslie Ogawa under the Longshore and Harbor Workers' Compensation Act (Longshore Act), 33 U.S.C. §§ 901-950. We have jurisdiction pursuant to 33 U.S.C. § 921(c), and we grant the petition in part, deny the petition in part, and remand for further administrative proceedings.

**I**

From 1977 until November 2002, Ogawa worked as the storeroom maintenance clerk at Hawaii Stevedores' marina terminal in Honolulu, Hawaii. Ogawa's position as the sole storeroom clerk required him to balance responsibilities related to Hawaii Stevedores' provision of maintenance services to shipping lines, including ordering and delivering parts for marina equipment, monitoring inventory, scheduling equipment maintenance, providing design assistance on special projects, and reviewing the time cards of other employees. Although Ogawa enjoyed his work, he also found it stressful. He worked up to fifteen unpaid hours per week from home to finish reports that could not be completed within the

regular workday, and also experienced stress from friction with his co-workers resulting from Ogawa's cost-cutting efforts. Ogawa was diagnosed with hypertension in 1987 and he regularly reported job stress to the doctor he saw for treatment of his high blood pressure.

Ogawa was admitted to the emergency room on November 13, 2002, after suffering a slow-developing left parietal stroke that left him with mild expressive aphasia and limited fine motor skills in his right hand and arm. The stroke had developed over the previous few days, and Ogawa later testified that he first noticed symptoms of right arm numbness and weakness while lifting ladders at work on Friday, November 8, 2002. When Ogawa returned to Hawaii Stevedores six months later, it was as an assistant to the new storeroom clerk who had replaced Ogawa after the stroke. Although he gradually built up his hours, Ogawa spoke, typed, wrote, and walked slower than before and was not able to work at his pre-stroke pace. In June 2003, during the course of downsizing, Hawaii Stevedores told Ogawa to choose between taking a medical retirement or facing termination. The same week, Ogawa filed an accident report which gave notice to Hawaii Stevedores that Ogawa believed his stroke to be work-related. At the end of June 2003 Ogawa chose medical retirement over termination.

Believing that job stress caused or contributed to his high blood pressure and stroke, Ogawa filed a disability compensation claim. The Office of Workers' Compensation Programs referred the claim to the Office of Administrative Law Judges for a formal hearing. An ALJ conducted a three-day hearing during which eight witnesses testified, including Dr. Howard Keller, an internist who examined Ogawa at his counsel's request, and Dr. Jack Scaff, a cardiologist who examined Ogawa at Hawaii Stevedores' request. The ALJ also received testimony from vocational rehabilitation counselor Howard Stauber and reports from additional examining doctors, including treating neurologist Dr. Kevin Kimata and examin-

ing clinical psychologists Dr. Brian Goodyear and Dr. Ann Mary Palozzi.

After the hearing, the ALJ issued a forty-six page decision concluding that Ogawa was temporarily disabled before March 15, 2005, and was permanently and totally disabled thereafter. The ALJ also granted Hawaii Stevedores' request that its liability be limited under section 8(f) of the Longshore Act, 33 U.S.C. § 908(f), such that Hawaii Stevedores would be responsible for 104 weeks of permanent disability payments with the federal government taking over thereafter. The BRB affirmed the ALJ's decision in all respects and this petition for review followed.

## II

The BRB must accept the ALJ's findings "unless they are contrary to the law, irrational, or unsupported by substantial evidence." *Rhine v. Stevedoring Servs. of Am.*, 596 F.3d 1161, 1163 (9th Cir. 2010). We, in turn, review the BRB for "errors of law and for adherence to the statutory standard governing the [BRB]'s review." *Id.* "Where the ALJ relies on witness credibility in reaching his [or her] decision, our court will interfere only where the credibility determinations conflict with the clear preponderance of the evidence, or where the determinations are inherently incredible or patently unreasonable." *Todd Pac. Shipyards Corp. v. Dir., Office of Workers' Comp. Programs*, 914 F.2d 1317, 1321 (9th Cir. 1990) (internal punctuation omitted). Finally, in considering petitions for review of BRB decisions, we apply the Administrative Procedure Act, including the directive that "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706; *see also Nat'l Steel & Shipbuilding Co. v. Bonner*, 600 F.2d 1288, 1292 (9th Cir. 1979) (applying 5 U.S.C. § 706 to a petition for review arising under the Longshore Act). Under the rule of prejudicial error, "we may overturn the ALJ's decision only if the error . . . prejudicially affected a substantial right of a party," which occurs only if it reasonably can be concluded

that absent such error there would have been a contrary result. *See Gunderson v. U.S. Dep't of Labor*, 601 F.3d 1013, 1021 (10th Cir. 2010) (internal punctuation omitted). Stated another way, we will not disturb the decision of an ALJ because of a harmless error.

**[1]** Our circuit has in substance undertaken harmless error review in past cases arising under the Longshore Act. *See Duncanson-Harrelson Co. v. Dir., Office of Workers' Comp. Programs*, 686 F.2d 1336, 1341-43 (9th Cir. 1982), *vacated on other grounds*, 462 U.S. 1101 (1983). We did not, however, refer to our review as "harmless error" analysis. We now confirm that harmless error analysis applies to petitions for review brought under the Longshore Act. We thus conform our practice to that of at least nine other circuits. *See, e.g.*, *Consolidation Coal Co. v. Williams*, 453 F.3d 609, 621-22 & n.6 (4th Cir. 2006); *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 713 (6th Cir. 2002); *Am. Stevedoring Ltd. v. Marinelli*, 248 F.3d 54, 65-66 (2d Cir. 2001); *Staftex Staffing v. Dir., Office of Worker's Comp. Programs*, 237 F.3d 404, 408 (5th Cir. 2000); *Am. Grain Trimmers, Inc. v. Office of Workers' Comp. Programs*, 181 F.3d 810, 819 (7th Cir. 1999) (en banc); *Big Horn Coal Co. v. Office of Workers' Comp. Programs*, 897 F.2d 1052, 1055 (10th Cir. 1990); *Wensel v. Dir., Office of Workers' Comp. Programs*, 888 F.2d 14, 17 (3d Cir. 1989); *Hunter v. Dir., Office of Workers' Comp. Programs*, 861 F.2d 516, 518 (8th Cir. 1988); *Ala. By-Products Corp. v. Killingsworth*, 733 F.2d 1511, 1516 n.10 (11th Cir. 1984). That a path is a beaten one, Justice Jackson long ago observed, is a persuasive reason to follow it. *See* Robert H. Jackson, *Full Faith and Credit—The Lawyer's Clause of the Constitution*, 45 Colum. L. Rev. 1, 26 (1945).

### III

**[2]** Hawaii Stevedores, first, argues that the ALJ erred in determining that Ogawa's claim was not barred by his failure to provide timely notice that his stroke was work-related.

Under the Longshore Act, an injured worker who wants to preserve a compensation claim must give the employer notice of the injury within "thirty days after the date of such injury" or "thirty days after the employee or beneficiary is aware, or in the exercise of reasonable diligence . . . should have been aware, of a relationship between the injury or death and the employment." 33 U.S.C. § 912(a). The Longshore Act excuses late notice under several circumstances, including where the employer was not prejudiced by the failure to give proper notice. *Id.* § 912(d)(2). The burden falls on the employer to establish by substantial evidence that it was prejudiced by the late notice. *Kashuba v. Legion Ins. Co.*, 139 F.3d 1273, 1275 (9th Cir. 1998). Here, the ALJ found that Ogawa's notice was due by May 14, 2003, but that Ogawa did not provide notice until the first week of June 2003. The ALJ excused the late notice, however, finding that Hawaii Stevedores suffered no prejudice as a result of it.

**[3]** The ALJ's prejudice finding was supported by substantial evidence. The ALJ noted, correctly, that Hawaii Stevedores makes no allegation that it lacked evidence of Ogawa's medical condition following the stroke, as it had access to all of Ogawa's medical records, his doctors, and Ogawa himself for two depositions and five independent medical examinations over nearly four years. *See Jones Stevedoring Co. v. Dir., Office of Workers' Comp. Programs*, 133 F.3d 683, 690 (9th Cir. 1997) (concluding that late notice was properly excused where the ALJ found that the employer had "ample opportunity" to conduct discovery and investigate workplace conditions). Instead of providing any concrete example of how its investigation was prejudiced by the late notice, Hawaii Stevedores relies on a bare assumption that an immediate medical exam might have provided more or different information about Ogawa's recovery. Such a speculative and conjectural theory of prejudice, however, is insufficient as a matter of law. *See Kashuba*, 139 F.3d at 1276 ("Evidence that lack of timely notice did impede the employer's ability to determine the nature and extent of the injury or illness . . . is

sufficient; a conclusory allegation of prejudice is not."). The ALJ's finding that Hawaii Stevedores did not meet its burden of demonstrating prejudice was supported by substantial evidence, and Ogawa's late notice was properly excused. *See Jones Stevedoring Co.*, 133 F.3d at 690.

## IV

**[4]** Hawaii Stevedores argues, second, that the ALJ erred in crediting Dr. Keller's opinion that Ogawa's stroke began at work and was caused in part by job stress. The primary evidence of Dr. Keller's lack of credibility, according to Hawaii Stevedores, is that Dr. Keller admitted to strengthening the conclusions in his report after he talked with Ogawa's attorney. The revised report said with more certainty that the stroke began while Ogawa was at work and that job stress was a contributing cause of the stroke. At the administrative hearing, Dr. Keller testified that he altered the language in his report after learning from Ogawa's attorney about how medical reports are used in litigation—something with which Dr. Keller was previously unfamiliar.

**[5]** The ALJ found Dr. Keller credible and accepted his testimony that he changed the language to reflect more accurately his opinion but did not change the substance of his opinion. Just as "[i]t is within the ALJ's prerogative, as finder of fact, to credit one witness's testimony over that of another," *Duhagon v. Metro. Stevedore Co.*, 169 F.3d 615, 618 (9th Cir. 1999) (per curiam), the ALJ is free to credit a witness's testimony in the face of one party's argument that the witness is not credible. The ALJ's reasons for crediting Dr. Keller's explanation about the changes to his report were not "inherently incredible or patently unreasonable," *see Todd Pac. Shipyards Corp.*, 914 F.2d at 1321 (citation omitted), and we therefore have no basis to set the credibility determination aside. The mere fact that an expert witness has talked with a party's lawyer and then altered his or her opinion language,

though it might be considered relevant, does not require a factfinder to find that expert witness is other than credible.

**V**

Hawaii Stevedores contends, third, that the ALJ erred in decertifying Dr. Scaff as an expert in cardiology. Although Ogawa did not object to the original certification of Dr. Scaff, Ogawa's post-trial brief argued that Dr. Scaff should be decertified because his testimony did not demonstrate expert knowledge. The ALJ granted the post-trial motion and Hawaii Stevedores now argues that it was error to do so without giving it a chance to respond in support of Dr. Scaff's qualifications.

**[6]** We express no view on whether the ALJ properly decertified Dr. Scaff because, as the BRB put it, decertification carried "no legal effect." The decertification decision came only after the ALJ discussed Dr. Scaff's report and testimony in detail and supplied many reasons for finding Dr. Scaff not credible. Hawaii Stevedores does not challenge the ALJ's credibility finding, so any error in decertifying Dr. Scaff was harmless; the ALJ had already rejected his opinion on grounds supported by substantial evidence. *See, e.g.*, *Am. Stevedoring Ltd. v. Marinelli*, 248 F.3d 54, 65-66 (2d Cir. 2001) (concluding that even if it was error to discredit a statement by the employer's expert, the error was harmless because the ALJ discounted the expert's opinion for several other reasons).

**VI**

**[7]** Hawaii Stevedores argues, fourth, that the ALJ erred in determining that Hawaii Stevedores did not submit substantial evidence that Ogawa's stroke did not arise in the course of his employment. The Longshore Act creates a presumption that a disabling injury suffered by a maritime worker is work-related and thus compensable. 33 U.S.C. § 920(a). An

employer is liable for employment conditions that cause an injury or aggravate or accelerate a pre-existing condition under the "aggravation rule," which dictates that "the employer takes the employee as he finds him." *SAIF Corp./Or. Ship v. Johnson*, 908 F.2d 1434, 1441 (9th Cir. 1990).

**[8]** Although the burden of persuasion remains on the disability claimant throughout the administrative process, *see Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 280-81 (1994), the burden of production shifts in the course of determining whether a claimant's injury is work-related. The statutory presumption may be invoked by the claimant upon a prima facie showing that (1) he or she suffered a harm, and (2) a workplace condition could have caused, aggravated, or accelerated the harm. *See Ramey v. Stevedoring Servs. of Am.*, 134 F.3d 954, 959 (9th Cir. 1998)*; Amerada Hess Corp. v. Dir., Office of Worker's Comp. Programs*, 543 F.3d 755, 761 (5th Cir. 2008). If the claimant successfully invokes the presumption at the first step, the employer may rebut the presumption at the second step by presenting substantial evidence that is "specific and comprehensive enough to sever the potential connection between the disability and the work environment." *Ramey*, 134 F.3d at 959 (citation omitted). The ALJ determines as a matter of law whether substantial rebuttal evidence has been presented. *Bath Iron Works Corp. v. Fields*, 599 F.3d 47, 54-55 (1st Cir. 2010). If the employer carries its evidentiary burden at step two, the presumption in favor of the claimant "falls out of the case" and the ALJ moves to the third and final step of weighing the evidence as a whole "to determine whether the claimant has established the necessary causal link between the injury and employment." *Id*. at 53. This final determination is a question of fact. *Id*. at 54-55.

**[9]** The ALJ determined that Ogawa successfully invoked the presumption that his disability is work-related by presenting evidence that stressful work conditions could have aggra-

vated or accelerated the onset of the stroke. The ALJ further determined that Hawaii Stevedores had not produced substantial countervailing evidence to rebut the presumption. Hawaii Stevedores urges that this step-two determination was error, and we agree. The evidence marshaled by Hawaii Stevedores to rebut the presumption that Ogawa's stroke was work-related included Ogawa's delay in reporting the stroke as work-related, the absence of a reference to right-arm weakness in Ogawa's emergency room records, Dr. Scaff's testimony that records created immediately after an injury are the most reliable, Ogawa's supervisor's testimony that the storeroom maintenance clerk position is not stressful, the fact that Ogawa enjoyed his job, and the possibility that Ogawa's stress may have come from stock and mutual fund losses instead of from work.

**[10]** In declining to credit this evidence, the ALJ cited to more-credible, contradictory testimony offered by Ogawa, Ogawa's co-workers, and Dr. Keller. This weighing of credibility, however, has no proper place in determining whether Hawaii Stevedores met its burden of production at step two. *Id.* at 55 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) ("In the nature of things, the determination that a defendant has met its burden of production [in a Title VII case] can involve no credibility assessment.")). Instead, at the second step the ALJ's task is to decide, as a legal matter, whether the employer submitted evidence that could satisfy a reasonable factfinder that the claimant's injury was not work-related. *Id.* The evidence submitted by Hawaii Stevedores was sufficient to meet this standard, and it was error for the ALJ to weigh the evidence and consider questions of credibility at the second step.

**[11]** Although we conclude that the ALJ erred in mislabeling the stage of the inquiry that supported her conclusion, we also conclude that the error was harmless. Despite its occurring under the auspices of determining whether Hawaii Stevedores submitted sufficient rebuttal evidence, the ALJ's

detailed analysis took into account all of the evidence bearing on whether Ogawa's stroke occurred at work, whether the storeroom maintenance clerk position is stressful, and whether workplace stress can accelerate a stroke. This is precisely the inquiry required of the ALJ at step three of the burden-shifting framework—a framework the ALJ correctly articulated at the outset of her analysis. The ALJ's ultimate conclusion that the totality of the evidence showed a relationship between stressful work conditions and Ogawa's stroke was supported by substantial evidence, and the ALJ's error in mislabeling the conclusion a step-two conclusion rather than a step-three conclusion was harmless. *See Am. Grain Trimmers, Inc. v. Office of Workers' Comp. Programs*, 181 F.3d 810, 819 (7th Cir. 1999) (en banc) (holding that the ALJ's apparent error in incorrectly describing the burden of proof was harmless where the ALJ had earlier "articulated exactly the right set of standards for this case" and "had the right standard in mind when he assessed the employer's evidence"). Observing the general rule in administrative law requiring prejudicial error for relief, *see* 5 U.S.C. § 706, and following our endorsement of the harmless error doctrine, we may not disturb the ALJ's determination that Ogawa's stroke qualifies as a compensable injury under the Longshore Act.

## VII

**[12]** Hawaii Stevedores contends, fifth, that the ALJ erred in determining that Ogawa was restricted to employment that allowed for frequent breaks. A disability is classified as "total" under the Longshore Act when "(1) a claimant demonstrates that the work-related injury in question renders him [or her] unable to return to prior employment, and (2) the employer subsequently fails to establish the availability of suitable alternative employment within the geographic area of the claimant's residence, which the claimant can perform considering the claimant's limitations, age, education, and background, and with a diligent employment search on the claimant's part." *Gen. Constr. Co. v. Castro*, 401 F.3d 963,

968-69 (9th Cir. 2005). If a claimant proves that a work-related injury prevents him or her from returning to the former job, the burden shifts to the employer to point to specific jobs that the claimant can perform. *Bumble Bee Seafoods v. Dir., Office of Workers' Comp. Programs*, 629 F.2d 1327, 1329-30 (9th Cir. 1980). Once the employer has pointed to one or more possible positions, the ALJ makes a factual finding as to whether the claimant is able to perform those jobs. *See id.* at 1330.

**[13]** Here the ALJ made a finding, supported by substantial evidence, that Ogawa could no longer work as the storeroom maintenance clerk. The ALJ made additional findings that Ogawa was restricted to employment that is sedentary, allows for frequent breaks, does not require fine motor speed or dexterity with the right hand, and is not intellectually stimulating, stressful and demanding. Hawaii Stevedores takes issue with the restriction requiring frequent breaks because the recommendation was vague and because the ALJ took that restriction from the report of Dr. Palozzi, a clinical psychologist who did not purport to offer an opinion about Ogawa's ability to work.

**[14]** We are not persuaded by Hawaii Stevedores' argument. The ALJ is expected to consider the record as a whole, including all witness testimony and each medical report, before entering findings. *See Parsons Corp. of Cal. v. Dir., Office of Workers' Comp. Programs*, 619 F.2d 38, 42 (9th Cir. 1980) (holding that an ALJ decision "must be affirmed by this court if it is rational and supported by substantial evidence on the record *as a whole*." (emphasis added)); *see also Walker v. Rothschild Int'l Stevedoring Co.*, 526 F.2d 1137, 1139 (9th Cir. 1975) (per curiam) (endorsing ALJ decision that "took into consideration all the testimony given at the hearing, as well as all medical reports of other doctors submitted to him"). The ALJ here arrived at the applicable work restrictions through her considered evaluation of the opinions of Doctors Keller, Goodyear, Palozzi, and Scaff. While Dr.

Palozzi's opinion on breaks was not labeled a "work restriction," it was labeled a "recommendation" that would help Ogawa avert more pronounced cognitive difficulties. We conclude that the ALJ did not err in concurring with Dr. Palozzi's recommendation, and that the work restrictions, including the requirement of breaks, were supported by substantial evidence.

Because Ogawa showed that he was unable to return to his position as the storeroom maintenance clerk, the burden shifts to Hawaii Stevedores to "establish the availability of suitable alternative employment." *Gen. Constr. Co.*, 401 F.3d at 969. Hawaii Stevedores does not dispute the ALJ's finding that none of the positions identified by the Vocational Evaluation Report accommodate all of the work restrictions the ALJ identified. Because the work restrictions were supported by substantial evidence, we see no error in the ALJ's conclusion that Ogawa is totally disabled within the meaning of the Longshore Act. *See id.* at 968-69.

## VIII

**[15]** Finally, Hawaii Stevedores and Ogawa both urge that the ALJ erred in determining the date of Ogawa's maximum medical improvement (MMI), the date which triggers a change in the classification of a claimant's disability from temporary to permanent. The MMI date is a question of fact that the ALJ determines from the medical evidence. *Container Stevedoring Co. v. Dir., Office of Workers' Comp. Programs*, 935 F.2d 1544, 1551 (9th Cir. 1991).

**[16]** We agree with the parties that the ALJ's determination of the MMI was not supported by substantial evidence. Despite Dr. Keller's testimony and Dr. Kimata's report, both of which indicated that Ogawa likely reached a stationary, permanent condition within about a year after the stroke, the ALJ set the MMI on March 14, 2005, about two and a half years after the stroke. Although the ALJ expressed concern

that the MMI testimony and opinions were speculative and unexplained, the ALJ did not take additional evidence on this point. Instead, the ALJ reasoned that "Dr. Keller would have more of a basis for his MMI date after examining the Claimant" and selected the date when Dr. Keller first examined Ogawa as the MMI date. The problem with this finding is that no doctor expressed a view that normal and natural stroke recovery continues to occur more than two years after a stroke, and Dr. Keller clearly opined that Ogawa reached MMI before Dr. Keller ever saw him. *See Gen. Constr. Co.*, 401 F.3d at 968 (explaining that the MMI is the date after which normal and natural healing is no longer likely). The record does not provide a basis for concluding that Ogawa had continued to heal until March 14, 2005, so this finding was not supported by substantial evidence.

[17] Nor was this error harmless. The ALJ capped Hawaii Stevedores' liability for Ogawa's permanent disability benefits at 104 weeks. The period of permanent disability begins at the date of MMI. *Id.*; 33 U.S.C. § 908(f)(1)-(2). Until the claimant reaches MMI, the employer remains liable for temporary disability benefits, which in this case extended Hawaii Stevedores' temporary-benefits liability for two and a half years following Ogawa's stroke. *See* 33 U.S.C. § 908(b), (e). Moreover, a later MMI date delays the onset of the annual upward adjustments to Ogawa's benefit award that apply to permanent, but not to temporary, disability payments. 33 U.S.C. § 910(f). Because the MMI date may affect the calculation of the compensation award, we remand this issue to the BRB so that it may be returned to the ALJ for additional factfinding. *See Brady-Hamilton Stevedore Co. v. Dir., Office of Workers' Comp. Programs*, 58 F.3d 419, 422 (9th Cir. 1995) (remanding to ALJ for further factfinding on proper wage calculation). On remand, the ALJ may make any adjustments to the compensation award that prove necessary in light of the redetermined MMI date.

## IX

**[18]** The petition for review is **GRANTED IN PART** on the issue of Ogawa's maximum medical improvement date and **DENIED IN PART** with respect to all other issues. The matter is **REMANDED** for further administrative proceedings consistent with this opinion. Each party shall bear its own costs on appeal.